By the Court. Slosson, J.
I had occasion, in another action by the same plaintiffs against the tenants of other premises held -under a similar lease, in which the pleadings were in all respects, in substance, lilce those in the present action, to consider the question of the sufficiency of a complaint in this form, under the Code, in connection with an answer setting up the lease and averring performance of its covenants. I held it, in that case, to be sufficient, and see no reason to change my views in that respect.
The objection to the evidence on that ground was, therefore, properly overruled.
It was contended by the defendant, on the argument, that all taxes which the tenant is bound by the terms of his lease to pay, are to be treated, in law, as part of the rent reserved, and that if .this be so, the present action must fail, since, he contends, there *266 are but three modes in which ejectment for non-payment of rent can be sustained, to wit:
First, By a demand of the rent on the day it is due, under the old rule at common law.
Second, By proceeding under the provisions of 2 R. S. 505, giving a right to the action, where a half-year’s rent, or more, is in arrear, and no sufficient distress is found on the premises to satisfy it.
Third, By proceeding under the provisions of the act of 1840, ch. 274, “to abolish distress for rent, etc.and that the case does not fall under either of these, since there is ho pretence of a demand of the payment of the taxes (rent) by the landlord, nor of the giving of fifteen days’ notice of the intention to .re-enter, as provided by the act of 1846, and the case admits there was a sufficiency of distress on the premises, which would take it out of the provisions of 2 Revised Statutes.
To sustain these views, which a,re not without plausibility, he cited that provision of the general tax law, (1 R. S. 419, § 6,) which provides, in effect, that where a tenant has been obliged to pay a tax which the landlord was, by the terms of the lease bound to pay, he may recover it back from the landlord-by action, “or retain it from any rent due,” or accruing from him to the landlord. We see nothing in this provision which can properly be construed as sustaining this argument; it is a provision of convenience merely, by which the tenant is eitabled, if he so elect, to obtain an early indemnity for the payment he has made out of a fund in hand, and without suit. Rent has a fixed legal meaning, and to consider all payments which, by the terms of a lease, a tenant is bound to make, as coming within its definition, would lead to a confusion of ideas without necessity or advantage.
It is said that the payment of taxes is part of the return made by the defendant to his landlord for the use of the property, and, therefore, properly comes under the definition of rent. But in one sense the performance of every covenant on the part of the lessee is a return made by the tenant for the use of the land. Yet it would hardly be contended that money stipulated to be expended in repairs or for insurance, or in the way of improvements, was any portion of the rent. -Taxes, being payable annually, ap-. proach, it is true, to the idea and- character of rent, which is -a *267 certain yearly return reserved to the landlord in money, or kind, or service for the enjoyment of the freehold; but they are distinguishable from rent in this, that they are uncertain both as to amount and time of payment, and are payable not to the landlord but to the government, and are imposed for the benefit of the public, and the landlord may, by the terms of his agreement with the tenant, be relieved from their payment; taxes are not, on that account, any more rent than the expenditure of money for insurance, under a' covenant to that effect on the part of the lessee. '
The forfeiture in the present action is claimed on two grounds,
First. That the taxes for the year 1854 were not paid by the defendant.
Second. That the Croton water rent of 1850 was left unpaid, by reason whereof the premises were sold and the plaintiffs were compelled to redeem, for their own protection.
At the time the lease in question was executed, the Croton water had not been introduced into the city, and no such thing was known as a Croton water rent. The plaintiffs, however, contend that notwithstanding this, it became, from the time the rent was established in 1852, an “ordinary yearly tax,” within the meaning of the covenant in the lease.
It is, perhaps, unnecessary to the support of the present action, that the plaintiff should establish this proposition, since there is a clear default by the nonpayment of the ordinary tax of 1854, but as the point has been made it may be well to dispose of it here.
The act for supplying New York with pure and wholesome water was passed May 2, 1834.
Various additional and amendatory acts were subsequently passed.
By the act of April 11, 1842, the corporation of the city were authorized “ to organize a department, with full powers, for the management of such works (connected with the supply of the water) and the distribution of said water.”
By the act of April 11, 1849, the “ Croton Aqueduct Department” was organized, and .the corporation of the city were authorized to establish, by ordinance, a scale of annual rents for the supply of the water, to be called “regular rents,” and to be apportioned to different classes of buildings in the city, in reference to their dimensions, number of families or occupants, or eonsump *268 tion of water, etc., etc., and to alter, amend, and increase the scale from time to time; such rents, when established, are to be collected from the owners or occupants of the buildings situated on lots adjoining any street or avenue in which the distributing pipes are or may be laid, and from which they can be supplied, and they are made a charge and lien on said houses and lots respectively.
By the 21st section of the act, the President of the Croton Acqueduct Department is required, at the termination of each water .year, to cause lists of the unpaid rents to be prepared with the names of the owners, etc.
By the act of 1851, to amend the act of 1849, (Sess. Laws of 1851, ch. 298,) these lists are to remain in the department until the 1st of January thereafter, for the purpose of receiving the arrears of rent. On the 1st of January in each year, the president of the department is to transmit to the comptroller a list of all unpaid water-rents for the preceding water year, and the comptroller is thereupon directed to advertise and sell the property on which said water-rents are a lien in the same manner as for unpaid taxes; and'the rents so in arrear are made a lien on the property, to be collected and recovered by a sale of the premises as provided by law in the case of unpaid taxes in the city.
By section 28 of the act of 1849, it is provided that “ For the collection of the water-rents to be imposed by virtue of the act, it shall take effect on the 1st of May, in the year after that in which the Common Council determines to carry its provisions into effect, and for the transmutation of the unpaid rents into a direct tax in the description of buildings to which they may be made to apply by ordinance of the Common Council.”
This last clause is rather obscure in the order in which it stands, and should be read in immediate connection with the first clause of the section.
•The Common Council, by ordinance approved 20th of Marp.b, 1851", established a scale of water-rents, as authorized to do by this act, fixing the rates upon the buildings of the city according to classes. .
By the terms of the act, therefore, its provisions in respect to the collection of the rents took effect on the 1st of May, 1852. The property in question was sold in June following.
*269 It will thus be seen that these rents possess many of the essential elements of a tax; they are general and annual, and imposed for a public purpose, and from the time of their imposition become both “ordinary and yearly” burdens; they constitute a lien on the property, and are collectable in the same manner as ordinary taxes; indeed, by non-payment they become, by the terms of the act of 1849, “ transmuted into a tax.” The tenant, moreover, derives all the benefit from the use of the water, and the payment of the rent by him therefore works no hardship.
I think, therefore, that they may fairly be considered as embraced within the term “ taxes,” within the meaning of the covenant.
But it is said, no such charge could have been in the contemplation of the parties, as the lease was made in 1843, and the Croton Department was not created till 1849; that it was, therefore, a tax not in use at the time the lease was executed, nor was it a tax of a like nature with any before imposed.
This is true, but the act for supplying the city of New York with pure and wholesome water was passed as early as May, 1834, and acts amendatory of it were passed in each successive year down to the period of this lease, and the possible, or even probable imposition of some charge on the property for the use of the water if introduced within the term demised, may fairly be presumed to have been within the contemplation of the parties.
The language of the covenant is, to pay “ all ordinary yearly taxes.” In the case of Kearney v. Post, (1 Sandf. R. 105,) this court held that a covenant to pay all assessments, etc., which should be imposed on the premises during the term, extended to assessments imposed under statutes passed subsequently to the lease, and the decision was affirmed by the Court of Appeals. (2 Coms. R. 394.)
If this, therefore, was an ordinary tax, as we have considered it to be, the case referred to is decisive on the point. (See also the cases of Corporation of New York v. Cushman, 10 J. R. 96.; Bleecker v. Ballou, 3 Wend. R. 263.)
The point most relied upon by the defendant is, that from the time of the breach of the covenant, the defendant was in the position of a tenant at sufferance, and could not, therefore, be ejected without a previous notice to quit.
*270 If it had been a condition of this lease that, on a breach of any of its covenants, the lease should become void, and the defendant, after a breach, had remained in possession by permission, or by the laches of the landlord, he would have been either a tenant at sufferance or at will, as the case may be, and entitled to notice to quit before he could have been ejected; but the provision is, that on default of - the tenant in respect to any of the covenants, the landlord may either re-enter or distrain. It is therefore, a lease not void, but voidable at the election of the landlord, and the estate of the tenant still continues, subject to the right of re-entry. (Stuyvesant v. Davis, 9 Paige R. 427; Parmelee v. Oswego, etc., R. R. Co. 2 Selden R. 80.)
How is this election to be manifested ?
The defendant contends it must be by a notice to quit.
The answer is, he is neither a tenant at sufferance, nor at will.
The object of a notice to quit is, to terminate the tenancy, and it is proper only in cases where no agreement exists between the parties, determining the period when, or the contingency on which, the tenancy shall cease. Such is the character of a tenancy at will or at sufferance, which are the only two cases in which notice to quit is prescribed by statute. A tenancy at sufferance is created by holding over after the termination of a lease or letting, without the permission of the landlord; but even then the tenant is not entitled to notice to quit, unless the landlord has permitted the tenancy to continue for such a length of time after the expiration of the term as to imply an assent on his part, and it has been held that three months was not sufficient, under certain circumstances, to create such implication of assent. (11 Wendell R. 616.)
If, in addition to the holding over, the landlord receives rent, it becomes an estate at will, or from year to year. Where either of these tenancies exist, or, in other words, where a tenancy exists not regulated and defined by express agreement between the parties, a notice to quit is highly proper, as a convenient and just mode of putting an énd to it; it comes in place of an express stipulation between the parties. But where the parties have, by their own agreement ascertained and determined at what period the term demised shall terminate, a notice to quit is unnecessary, and a tenant holding over after such period may be proceeded against *271 by ejectment forthwith, .unless the holding over continues, as before stated, for such a period as to imply assent to its continuance on the part of the landlord, or unless he receives rent, and thereby converts the tenancy into an estate at will. (Rowan v. Little, 11 Wend. R., 616; Adams’s Eject. [Ed. 1854] 140, 1; 2 Serg. & R. Rep. 49; Messenger v. Armstrong, 1 T. R. 53; Right v. Darby, 1 J. R. 162; Woodfall L. and T. 177; Taylor’s Land. and Ten. 44, 5; 4 Kent’s Com. 118; Graham’s Prac. 848; Sander’s Pl. and Ev. Tit. Eject.; Allen v. Jaquish, 21 Wendell R. 631.)
The difficulty arises in applying this general rule to the case in hand. Where atenant holds over after the termination of his term fixed by the agreement between the parties on a day certain, it will not be contended that he is entitled to notice to quit, except in the contingency of a continuance in possession for so long as to imply assent on the part of the landlord, but the breach of the covenant in question, not of itself working a forfeiture by the terms of the lease, the term does not cease at the moment of the breach. In what position is the tenant after the breach? He does not hold over, for the term has not ended, yet he has committed a default, by reason of which the landlord may re-enter and terminate the lease. The difficulty, however, is more seeming than real. The right to the ejectment arises at the instant of the breach; but it is a right which the landlord may or may not exercise. His election is determined by the commencement of the action without actual entry. (Lawrence v. Williams, 2 Duer’s R. 587.) And from the moment of the election, the tenant is, in the eye of the law, a trespasser; until this exercise of his election by the landlord, the tenant continues tenant, under the terms of his lease, but liable to be' ejected if the landlord elects to enforce the forfeiture already incurred; the question, thenceforth, becomes one of election to enforce or waive the forfeiture on the part of the landlord.
The forfeiture being claimed under a breach of the covenant for payment of taxes, was a demand of the taxes necessary before the right of entry occurred, as in the case of a forfeiture for nonpayment of rent at common law ?
In the case of Jackson v. Harrison, (17 J. R. 66,) in which the forfeiture was claimed for a breach of the covenant to pay taxes, as well as of that for the payment of rent, the court, Van Hess, *272 Justice, says: “ The plaintiff equally fails in showing a right of re-entry by reason that the defendant did not pay the United States tax, because the indispensably necessary step of making a demand of the defendants within the period required by law, in order to create a forfeiture, was not taken.”
I concur with the learned counsel for the plaintiffs, in thinking this dictum of that eminent Judge, not well considered.
Where a forfeiture was claimed for the non-payment of rent, a demand of the rent must be shown, unless the proceeding is under the statute, (2 Revised Statutes, 505, § 31); but taxes, as has been shown, form no part of the rent, they are not payable to the landlord, nor on a day certain, and no demand could properly be made by the landlord of his tenant in respect thereto, except to repay what the landlord had been compelled himself to pay by reason of his tenant’s default; this would be a demand for reimbursement merely, whereas the default which works the forfeiture, is the non-payment óf the taxes to the government, and it is not perceived how a mere refusal to repay the amount expended by the landlord for taxes, could work a forfeiture, when no covenant of repayment is contained in the lease; if so, a demand of repayment can not be a necessary pre-requisite to the right of action.
Besides, the payment of the taxes by the landlord, in case of the tenant’s default, is not necessary to his right of action; that is complete on the breach of the tenant’s covenant; a demand of their re-payment by the tenant must, therefore, be unnecessary.
As this is not a case of default in the payment of rent, the statute of May, 1846, providing for a notice of fifteen days, in lieu of a distress, does not apply. Moreover, the statute is applied in terms to the case of a lease, reserving a right of re-entry “ in default of a sufficiency of goods and chattels whereon to distrain;” whereas, the lease at bar contains no clause of distress whatever.
The defendant claims that, even if in strict right the plaintiff is entitled to judgment in the action, it is nevertheless a case in which equity, even after judgment, will administer relief on full compensation being made; and he contends that such relief may be given in the present suit, on his complying with certain com ditions to be prescribed by the court, as payment of the taxes in arrear, interest, and costs. (Code, §§ 150, 274.)
On the trial he proved, without objection, that on the 9th of *273 June, 1856, (after suit eommeneed, and just before the trial,) he went to one of the plaintiffs with $200 in his pocket, and offered to pay the arrears of taxes, rents, and all other charges against the property, but the plaintiff refused to accept any thing.
It may be admitted that this offer covered the costs of the action. Is the defendant entitled, on this state of facts, to any affirmative relief in the judgment to be rendered in the action under section 274 of the Code ? I strongly incline to the opinion that he is not.
The “ affirmative relief” to which the defendant may be entitled, under this section of the Code, means, I think, such relief as may properly be given within the issues made by the pleadings, or according to the legal or equitable rights of the parties, as established by the evidence, not to that redress which is equally applicable after as before judgment, and may be obtained on motion or by action. If, therefore, facts had been set up in a supplemental answer, would they have constituted a defence to the action, either legal or equitable ? I apprehend not, for an offer of indemnity, and refusal to accept, cannot avoid the forfeiture; that is a right fixed by the contract; and all the court can do, by way of relief, is to stay the plaintiff’s proceedings on compensation being made.
The defendant loses nothing for the want of a supplemental answer, for the proof is in, without objection, and we can pass on its sufficiency as a defence as well as though the facts had been pleaded.
That the defendant will be entitled to relief, notwithstanding judgment may pass against him, I think perfectly clear.
The court has equitable as well as legal jurisdiction of the actions of which it has cognizance, and I take the rule to be well settled, that equity will readily, where the breach is not willful, relieve from a forfeiture or penalty, aswhere the stipulation is intended as a mere security for the payment of money, and precise compensation can be made.
The following authorities will be found to sustain this doctrine: Wafer v. Mocatto, 9 Mod. R. 112; Sanders v. Pope, 12 Ves. R. 282; Davis v. West, 12 Vesey R. 475; Hill v. Barclay, 18 Vesey R. 55; Reynolds v. Pitt, 19 Vesey R. 133; Baxter v. Lanning, 7 Paige R. 350; Story’s Eq. §§ 1314, 1315, 1319, 1321-2-3-4.
*274 In the case of Davis v. West, above cited, which was a motion . for an injunction to restrain execution on a verdict in ejectment, brought on a breach of the covenant for payment of rent, the Lord Chancellor referred to the authorities as establishing “that where covenants are broken, and there is no fraud, and the party is capable of giving complete compensation, it is the province of a court of equity to interfere to give the relief against the forfeiture for breach of other covenants, as well as that for payment of rent.”
In Skinner v. White, (17 J. R.,) above cited, in the court of errors, Yates, Justice, says: “I cannot accede to the principle that a Court of Chancery is restricted in giving “ relief to cases of absolute forfeiture or penalty only. Relief may be granted against the breach of an agreement, not willful or fraudulent, where full compensation can be made, so as to render the party perfectly secure and indemnified, and place him in the same situation as if the occurrence had not happened.”
In England, as in this state, where the forfeiture rests on a breach of the covenant for payment of rent, the relief may, under a special statute, be obtained in the action at law without going into equity. (4 Geo. II., ch. 28; 2 R. S. 505, §§ 33, 34.)
In a similar action to the present, between the same plaintiffs and the tenants of another building owned by the plaintiffs, for breach of a precisely similar covenant, and to which I have alluded in the commencement of this opinion, (the case of Garner v. Sykes,) I relieved the defendants on motion after judgment, (no objection being made to the form of the application,) on the terms of making full compensation and paying all the costs, and on appeal the decision was sustained by the General Term, so that the question must be considered as settled as respects this court.
The difficulty in the way of granting this relief now in the form of a judgment is, that the defendant does not waive his defence to the action on the legal right, but relies upon the tender and refusal as constituting in itself a sufficient ground for the court to decree equitable relief. Had the defendant, in addition to proving the tender and refusal, offered to bring the money into court, or had he made a distinct motion to pay what the court should consider to be just, before judgment, waiving any defence to the action, I am clear that the "relief could have been granted. The question is certainly not free from difficulty and doubt, but under *275 our present view of it, the defendant cannot be prejudiced as to the relief by the mere fact of judgment passing for the plaintiff; we think this a proper disposition to be made of the case, reserving to the defendant his rights to apply after judgment.
It may be proper to advert to the motion made by the defendant on the trial for leave to amend the answer, by setting up the offer to pay the taxes in arrear, etc., and by inserting a prayer for equitable relief, or to file a supplemental answer for the like purposes. The motion was denied, and the defendant excepted.
So far as the refusal to allow the amendment is concerned, that was clearly in the discretion of the Judge, and is not a subject of exception. (6 Barb. R. 308.)
Was the Judge bound to have suspended the trial, and allow the defendant to set up the new matter in a supplemental answer?
The facts arose after the commencement of the June Term, at which the cause was tried.
A plea oí puis darrein tendered at the trial, and properly verified, was, under the old practice, a matter of right, if a term had not intervened, whether the plea was good or bad, as a defence, (3 Caine’sR.172,) and if this motion was to be determined by the rules which formerly governed such a plea, the Judge would probably have been bound to have allowed it.
This court, in the case of Hoyt v. Sheldon, has recently decided that section 177 of the Code has established one uniform mode of applying to the court for leave to file a supplemental proceeding, to wit, by motion, and this is properly made on motion or on an order to show cause.
We think the Judge properly refused to allow the motion made at the trial.
Judgment must be for the plaintiffs, with liberty to the defendant to apply to the court for such relief against it as he may be entitled to, and without prejudice to his right to bring an action for such relief, if he deem the latter the proper course.