## N. Y. SUPERIOR COURT.

### GILBERT GILES agt. WILLIAM AUSTIN.

Equitable relief, in cases of penalties and forfeitures, is limited to such cases as admit of compensation, according to the original intent of the parties.

In cases where the penalty or forfeiture is designed to secure the payment of a certain sum of money, a court of equity will afford relief on payment of the money secured, with interest.

As to the covenants in question contained in the lease, the principal end to be attained was the payment to the landlord of the rent reserved, and the discharge of the estate from the taxes and assessments which might be imposed during the term. The right of re-entry reserved to the landlord is the ultimate sanction operating to secure the performance of the tenant's obligations under the lease.

*Special Term, March,* 1873.

JOSEPH H. CHOATE, *for plaintiff.*
THOS. B. BROWNING, *for defendant.*

VAN VORST, *J.*—If this was a re-entry sought to be enforced on account of the non-payment of rent to the landlord, there would be no difficulty in determining whether equitable relief could be afforded the tenant, and he be relieved from the forfeitures occasioned by his breach of the covenants in the lease, as compensation could yet be made to the landlord by ordering the payment to him of the amount with interest, and by the imposition of such other terms as would be just and equitable. Although the obligation is in his favor, yet the taxes and assessments, which the tenant failed to meet, when due and payable, do not go directly to the landlord, but to the government. The omission to pay them at the time appointed subjects the land upon which they are a lien and burden to sale, and the landlord's title to jeopardy.

Yet I cannot but conclude that when the taxes are actually paid by the tenant, whether at the time they became due or subsequently, the real object and intent of the parties, the discharge of the land from the lien, is substantially attained. Especially would this be so if no steps had been taken, during the period of default, for the sale of the land on account of their non-payment.

The object of the landlord in demanding this covenant from the tenant was to shift from himself, the *onus*, upon the tenant who was to occupy the land, these legal burdens. In view of this assumption by the tenant of the payment of taxes and assessments, the amount of rent to be paid by him was doubtless adjusted.

In the case of *Higgins* agt. *The Rector, etc., of Trinity Church* (48 *N. Y.*, 532), it was held that the covenant of a tenant to pay taxes and assessments is an obligation in favor of the landlord which the latter might enforce by action, in which he might recover the amount of the taxes and assessments from the tenant, although he had not himself actually paid them.

The court says, " the covenant is broken when the defendant neglects to pay taxes and assessments duly imposed. The defendant is not at liberty to say that it is the debt of the plaintiffs; let them first pay it and I will pay them. It is his own debt, made so by the terms of his covenant."

If this be so, and the obligation be a debt created by the tenant, there is no more difficulty in ascertaining the amount of compensation to be paid by the tenant, to be relieved from the legal consequences of his default, than if it was the result of a failure promptly to pay his rent.

The amount of taxes and assessments is definitely fixed and limited when imposed, and the time of their payment unalterably regulated by law, and the amount of interest to be paid in case of delay is also clearly established by authority.

If the landlord had himself paid these taxes and assessments, the amount he would be entitled to receive, as a con-

Giles agt. Austin.

dition to the tenant's relief (if redress was proper), could be accurately adjusted, and full compensation made him.

In the case of *Garner* agt. *Hannah* (6 *Duer*, 262), it was substantially held that the clause of re-entry, as applicable to covenants for the payment of rent or taxes or any other sum certain, is in equity treated as a security for the payment of moneys, and precise compensation can be made for their breach, and that a forfeiture for the non-payment of which is relievable in equity.

Such obligations possess elements of certainty and fixedness as to amounts and time of payment which generally apply neither to covenant to repair nor insure.

But it is claimed by the defendant that the conduct of the plaintiff has been such as to disentitle him to equitable relief. That his laches cannot be excused. That he has been willful in his default, and has exposed the reversion to danger.

These objections can be urged, to some extent, to all cases of default for non-payment of rent; but as a consequence the tenant must, if he would have equitable relief from a forfeiture, inevitably make compensation in damages.

I am not satisfied that the conduct of the plaintiff has been " willful " in such sense as to deprive him of equitable consideration and relief.

The plaintiff constitutionally and by habit depended upon others. The person to whom he intrusted the liquidation of those taxes, and to whom he gave the means for this purpose; neglected his duties. For years the plaintiff supposed the taxes and assessments had been paid, and when spoken to by defendant on the subject said they were paid.

There is nothing in the case which tends in the slightest degree to show that he ever denied his obligations under the lease, or that he sought to evade them. And when in November, 1868, his attention was definitely called to their non-payment, and when after examination he found them to be outstanding, he expressed his willingness and his intention to discharge these liens.

Ignorant of the consequences of his default, he supposed the penalty which he would incur was the payment of increased interest. That the loss was on him alone. He was doubtless lulled into a mistaken feeling of security by the fact, as he was advised, that his landlord had allowed assessments, considerable in amount, to remain as a charge and lien upon the premises for many years without any apparent danger or hazard to the property.

I would by no adjudication give any license or encouragement to the neglect or willful postponement of legal obligations. The law demands that they should be promptly met.

But in the case of a person of slender capacity, as this plaintiff is shown to be, who through ignorance of the consequences of his default in promptly meeting his legal obligations, the binding force of which he does not willfully dispute, although he negligently postpones, and who blindly relies upon the mistaken advice of others, in whom he was justified in confiding, and when an adequate compensation for the default can be ascertained and made in money, the severe consequences of the default being the forfeiture of a considerable property, upon which he is greatly dependent, the benign principles of equity should interfere to shield him from the strictly legal consequences.

I cannot think but that this plaintiff should have relief if it can be made upon principles which ordinarily apply to cases of this nature.

But it is objected by the defendant that if the plaintiff is entitled to any relief he should have sought it in the ejectment suit; that this action is wholly unnecessary, and its commencement, under the circumstances, itself a breach of equity.

Such appears to have been the opinion of the learned chief justice when the case was before this court at general term, upon the appeal from the judgment entered upon the report of the referee granting the plaintiff relief from the forfeiture upon equitable terms.

· Giles agt. Austin.

In the opinion delivered by the chief justice he says: "If he is entitled to any relief he may obtain it by proper answer in the ejectment suit itself;" and he further adds, "nor was it necessary for him to institute this action for the purpose of setting up the equities acquired by him by reason of the payment of taxes *pendente lite*. For if those payments operated as an equitable release and discharge of the term from the legal forfeiture which had been incurred, because of the previous failure of the tenant to perform his covenant, they would have constituted a perfect defense to the action of ejectment if duly set forth in a supplemental answer; and in that case certainly the defendant then would have been entitled, upon a proper motion, to an order permitting him to put in such an answer; and that the bringing of this action constitutes such breaches of the rules of equity and good conscience as deprive him of equitable relief in this suit."

The chief justice, for the reasons assigned by him, was in favor of a reversal of the judgment. Judge Jones concurred with the chief justice in a reversal of the judgment, and assigned, as reasons, that "the laches and action of the plaintiff have been such as not to entitle him to favorable consideration by a court of equity; and," he adds, "I am unwilling to make this case a precedent for granting relief under circumstances of such gross and inexcusable neglect." The judgment was accordingly reversed, and the plaintiff's complaint dismissed.

Judge Monell, who was a member of the court before which the appeal was argued, did not concur in the reversal or dismissal, but was for affirmance.

The complaint having been dismissed without awarding a new trial, at a subsequent general term of the court, upon argument, the order reversing the judgment was so far modified as to award a new trial.

The new trial was granted upon affidavits made by the plaintiff and his counsel, setting forth the facts and circumstances under which this action was brought; showing that

Giles agt. Austin.

the plaintiff, in bringing the action, acted entirely upon the advice of his counsel, in whose opinion the action was necessary adequately to protect the rights of the plaintiff; that the plaintiff implicitly and confidingly followed the advice and adopted the course suggested to him by his counsel. It was the opinion of the counsel that the relief from the forfeitures, to which the plaintiff was equitably entitled, could more readily and with greater certainty be inquired into by an affirmative action, in which all the equitable rights of both parties could be ascertained and adjusted, than by motion in the ejectment suit for leave to file a supplemental answer or for a stay of proceedings upon the judgment, which motion it was claimed would be addressed to the discretion of the court.

The opinion of the chief justice is certainly entitled to great consideration; and had the reversal of the judgment upon the grounds urged by him been concurred in by judge JONES, I should feel bound to follow his views, unless they are in opposition to other adjudications of this court announced at general term.

But the subsequent general term did not decide, when ordering a new trial, that the remedies open to the defendant in the ejectment suit debarred him from bringing an affirmative action for equitable relief.

Judge CURTIS, in delivering the opinion of the court, says: " The tendency of the administration of justice is to relieve from forfeitures. Equity has always sought to mitigate the harshness and severity of the common law. The undenied statements on which this application is addressed to the court, the magnitude of the forfeiture attempted to be enforced, the importance of the interest at stake, the relative characters, capacities and intentions of the parties, and their respective claims to the equitable consideration of the court, are all matters that are presented in this application. If, as it appears to be, this case was in part decided at the general term adversely to the plaintiff upon a point not raised or

Giles agt. Austin.

discussed there, a question as to the equities of his mode of applying to the court for relief from the forfeitures, then it appears to me that he should have an opportunity of presenting the additional evidence of his good faith, and the equities of his position as urged by this application.

" When a suitor of slender capacity and advanced in years seeks to be released from a most onerous forfeiture, upon such terms as to the court may seem equitable and as it may impose, unless he has taken a position or performed acts depriving himself of all claim to equitable consideration, the court will be disposed to hear his application, and in all proper cases extend the relief prayed for upon suitable terms.

" The plaintiff sought relief by bill in equity instead of by motion to set up his equities by a supplemental answer, and as the question respecting the fairness and propriety of his course in this respect was not raised or discussed at the general term, but was presented in its decision as a prominent ground for debarring him of his relief, and as he now applies upon verified statements that are uncontradicted, alleging that upon a new trial he can show that he acted in good faith and fairness, and upon the advice of able counsel, and upon what they believed to be the settled practice of this court, it is but just and in accordance with equity that he should have such an opportunity by proofs and arguments to present his position and protect it from a new and undiscussed difficulty."

Upon the new trial the plaintiff gave evidence upon the subjects embraced in the affidavits which were before the general term, and which were the foundation for the order granting a new trial.

This evidence shows conclusively that in bringing this suit the plaintiff acted in good faith, and upon the advice of able lawyers, his counsel, who, after due consideration, recommended this mode of procedure as the safest remedy to secure his equitable rights and best to determine the controversy between the parties, and in such manner as that the claims of each might be fairly adjusted ; that in giving such advice the

counsel for the plaintiff to a very considerable extent relied upon the opinion of this court announced in *Garner* agt. *Hannah* (6 *Duer*, 275).

Before adverting to the case of *Garner* agt. *Hannah* it may be proper at this point to consider the provisions of the Code affecting equitable relief to a defendant. Section 150 of the Code provides that a defendant may set forth by answer as many defenses and counter-claims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both.

Section 274 provides that the court "may grant to the defendant any affirmative relief to which he may be entitled."

The equitable claim of the plaintiff growing out of his pay-ment of the taxes and assessments arose after his answer had been interposed in the ejectment suit, and if available could only have been set up by way of supplemental answer, per-mission to file and serve which is not a matter of absolute right, but to be obtained by motion addressed to the discre-tion of the court, which is to determine its sufficiency as a defense (*Morell* agt. *Garelli*, 16 *Abb.*, 269).

Relief may also be granted on a motion for a stay of pro-ceedings after judgment. But it may well be urged that the ancient jurisdiction of a court of equity to relieve against a technical forfeiture is not divested by the provisions of the Code, above referred to, or by a remedy afforded through motion after judgment in a suit at law addressed to the dis-cretion of the court. At common law, in an action of eject-ment brought to recover the possession of land forfeited by the failure of a tenant to fulfill his covenant, relief might be had on motion after judgment (*Atkins* agt. *Chilson*, 11 *Metc.*, 112).

But that such remedy was accessible was no answer to a bill in chancery filed for affirmative equitable relief against the forfeiture. Either remedy could be adopted. In *Tibbs* agt. *Morris* (44 *Barb.*, 138), GROVER, J., held that a party was not bound to set up his equitable defense by answer, but

could bring his action; and so jealous is the law for the conservation of the tenant's equitable rights against the enforcement of sanctions and penalties for his exclusion that it is provided by statute that within six months after execution upon a judgment in an ejectment suit he may commence an action for relief (*R. S.*, *5th ed., vol.* 3, *p.* 830, § 7).

An earlier application before trial to stay the same and avoid its expense should be regarded with favor.

If the payment of the taxes and assessments by the tenant after forfeiture was no defense, as is claimed, section 150 could not aid him, as it provides only for setting forth of defenses, and it has been adjudged that the provisions of section 274 do not apply to cases of this character.

*Garner* agt. *Hannah* (6 *Duer*, 275) was decided at a general term of this court in 1857. I do not find that the authority of this case has been questioned. Chief justice BARBOUR does not allude to it in his opinion.

That was an action of ejectment. The plaintiff claimed to recover the possession of land under a clause of a re-entry in the lease on account of the tenant's failure to pay the taxes and assessments. Before bringing his action the landlord himself paid the liens left outstanding through the tenant's default. After the commencement of the action the defendant tendered the taxes to the landlord, which were refused. On the trial the defendant moved for leave to amend his answer by setting up his offer and the refusal, or to file a supplemental answer, which was denied, and a verdict was directed for the plaintiff, subject to the opinion of the court.

The court in its opinion at general term decided that if the facts had been set up in a supplemental answer they would have constituted no defense to the action. It was also decided that the defendant lost nothing for want of a supplemental answer, as the facts out of which his equity arose had been proven on the trial, and their sufficiency as a defense could be passed upon as well as though they had been pleaded. In alluding to the affirmative relief which might

be granted to a defendant under section 274, the court says it is limited to "such relief as may properly be given within the issues made by the pleadings, or according to the legal or equitable rights of the parties as established by the evidence, not to that redress which is equally applicable after as before judgment and may be obtained on motion *or by action.*" In rendering the judgment the court says: "We think the judge properly refused to allow the motion made at the trial. Judgment must be for the plaintiff, with liberty to the defendant to apply to the court for such relief against it as he may be entitled to, and without prejudice to his right *to bring an action* for such relief if he deems the latter the proper course."

This authority would seem clearly to justify the plaintiff's counsel in advising the commencement of this action, and sustains its propriety.

And it may not be improper to add that the defendant, instead of answering, might have demurred to the complaint, by which the appropriateness of this remedy could have been speedily determined on an issue of law, and that he consented to the injunction issued in this action, when on the order to show cause he might have successfully opposed its continuance if improperly granted. This conduct on his part would seem to afford reasonable ground to believe that the defendant was not wholly unwilling that his action at law should be stayed, nor to trust his rights and equities to the determination of this action.

From the most careful consideration which I have been able to give this subject, I am of opinion that this action is maintainable, and that it was fairly and in good faith brought, and that it is clearly the interests of both parties that their rights and claims now and here should be justly determined.

The case shows that the plaintiff is entitled to relief from the forfeiture under which he is resting, and to be reinstated in his rights under the lease upon making proper compensation to the defendant.

Giles agt. Austin.

Upon the trial the defendant stated in substance that he had never been and was not now unwilling that the plaintiff should be relieved, but insisted that his own equitable claims should be considered in determining the terms of the redress.

But in asking, as he does, that the plaintiff shall be adjudged to pay him, in addition to the rent which had been paid him in currency from the date of the lease to the 1st day of November, 1867, the difference between gold and currency for that whóle period, and should also pay the rent which has accrued since that time, and to the end of the term, in gold, the defendant demands more than a court of equity should or could properly grant.

The provision for a re-entry and the rights of the defendant thereunder are not independent; they exist in defendant's favor only to secure the performance of the obligations of the plaintiff created by the covenants in the lease, and in the manner and by the means therein expressed.

The legal right of re-entry cannot be used to exact from the plaintiff concessions, in the way of payment of money, other than fairly arise from his original engagement, or to place him under a new and more onerous contract.

I can conceive of no sound basis upon which the defendant can equitably claim that the plaintiff should advance to him, either for the past or future, the difference between currency and gold; such claim has no relation to the plaintiff's covenants, and if yielded would make a demand so great in amount, as that the remainder of the term would be of little profit to the plaintiff.

This being a proper case, the plaintiff should have redress in this action upon the usual terms. He has since the forfeiture and the commencement of the ejectment suit discharged all the liens by way of tax and assessment, except those for the years 1866, 1867, 1868, on the lot on Manhattan alley 1162. He had good reason to suppose that in paying the amount charged upon lots 1196 and 1162, grouped and appearing to be valued together on Reade street, he had

discharged the tax on the Manhattan alley lot, and it may be that the taxes on lot 1162 are in fact paid. But the evidence is not sufficient to satisfy me beyond doubt that this is so. In no event can the judgment in this action affect the question; it can neither take away or create a lien or obligation under the apparent assessment.

The liens, however, appear of record, and have been the foundation for proceedings to sell the land. The plaintiff should remove by payment or redemption these taxes and relieve the land from their effect. The hazard of their remaining should not rest upon the landlord. If their payment should afterward appear to be illegal he has his remedy for a recovery back of the money from the city.

The rent since the forfeiture, which, up to the time of payment of the same into court, had been tendered to the defendant and refused, should be paid to the defendant with legal interest up to the time of the deposit. The plaintiff should also pay the costs, disbursements and allowances of the defendant in the ejectment suit and in this action, and also the costs of the other defendant in the ejectment suit. I had some question as to whether the defendant should be allowed the costs of this action subsequent to the judgment entered upon the report of the referee, which made full compensation to the defendants for the legitimate consequences of the plaintiff's default, and upon the grounds that subsequent resistance should have been at defendant's expense, unless a more favorable result to him was obtained. But as that judgment was reversed by the general term, the defendant appears to have been legally justified in his appeal, and should recover these costs. The findings to be filed herein will state the terms of the relief and the extent thereof, and the manner and time in which to be performed and enforced with greater precision.