Folger, J.
The Code of Procedure (§ 177) provides for a supplemental answer, alleging material facts which have occurred after the former answer. The result of the decisions in the Supreme Court, and in the other courts which have passed upon the question, is that this section is a substitute for the former practice, in actions at law of a plea puis darrien, and in actions in equity of a supplemental answer (Bate v. Fellowes, 4 Bosw., 638 ; Hoyt v. Sheldon, 4 Abb., 59 ; Slauson v. Englehart, 34 Barb., 198; Brown v. Richards, 4 Robt., 603; Garner v. Hannah, 6 Duer, 262), but with *236 this distinction, that the supplemental answer under the Code does not take the place of the original -answer, but is in addition to it (34 Barb., supra), which, indeed, under the former practice had been held to be the case, when the plea puis darrien was not inconsistent with the former plea. (Rayner v. Dyett, 2 Wend., 300.) . Section 469 of the Code continues in force' all pre-existing rules and practice of the courts in civil actions consistent with the Code itself. And it has been said that by the force of this section, section 177 must be so administered as that a leave to serve a supplemental answer shall be given, in actions at law, in all cases in which, a plea pu.is darrien could have been put in as a matter of right. (Hoyt v. Sheldon, supra.) Which case was recognized in Garner v. Hannah (supra), with a limitation that leave must be applied for by motion at Special Term, and the supplemental answer could not be tendered at the trial court, as was the case with the plea puis darrien,- under the former practice; while in Bate v. Fellowes (supra), it was thought that the Code was designed to alter the rule of the former practice, so as to leave the reception of the answer ojien to a larger discretion -than the. courts previously exercised on the same subject; but this general remark is qualified, and the discretion supposed to exist, is indicated as no more than to do that upon the motion for leave to serve the supplemental answer, which a court under the former practice would have done after the filing of the plea, on a motion to strike it from the file of the court. Thus the plea would be ordered off the files, if the defendant was chargeable with laches in putting it in, and his motion to be allowed to serve it nunc,pro tunc would, in such case be denied (Sandford v. Sinclair, 3 Denio, 269), and it would have been set aside on motion if false, or contrary to justice, or fraudulent; as is to be implied from Jones v. Herbert (7 Taunt., 421). Section 177 in providing for a motion for leave to make a supplemental answer, gives to the court the power and opportunity to look into the facts, before the answer is served, with the same scrutiny which, under the practice more or less supplanted *237 by the Code, was exercised after the plea had been served, on a motion then made to strike it out. And, in the exercise of this power, the court has, in one case at least, required the defendant applying for leave to supplement his answer to abandon his former answer, • and to rest his defence alone upon the matter to be set up ill the supplemental answer. (Bate v. Fellovies, supra.) And this though, as above stated, the authorities are to the end that, under the Code, the supplemental answer is not a substitute for the original answer, but an addition to it. So that it comes to this: That generally a defendant has a right to set up, by supplemental answer, matter of defence which has occurred or come to his knowledge subsequently to the putting in of his first answer, but that he must apply to the court, by motion, for leave so to do, so that the opposite party may be heard, and the court may determine whether there has been inexcusable laches, or whether any of the reasons appear, which are recognized as giving authority for denying the exercise of the general right •in the particular instance. And the court must grant leave unless the motion papers show a case in which the court may exercise a discretion as tó granting or withholding leave. It is claimed that Medbury v. Swan (46 N. Y., 200) is in' conflict with this. There may be expressions there which, if separated from the context and from the facts of the case, are susceptible of such interpretation. It is said that, “ the right to allege new matter, by supplemental pleading, is not an absolute and positive right, but is made to depend upon the leave of the court in the exercise of a legal discretion.” This statement alone would be in conflict with what is now said. But the next sentence in that case explains and limits that which has just been quoted, to wit: “ The application may be refused if the new defence, although strictly legal, is inequitable, or if the application is not made with reasonable diligence. A party may waive his right altogether, or lose it by laches.” What is meant in Medbury v. Swan, and I think what is there expressed when the case is taken altogether, is, that there is no such absolute unrestrainable *238 right to plead by a supplemental answer matter newly arisen, as that the court may not control the exercise of the right within the limits which have been long established, by refusing leave thus to answer when long delay has intervened, or fraud is shown, or injustice will be wrought by allowing the new defence. That was a case presenting the question of laches. The motion there was denied below, upon the ground that laches existed. This court held that there was, upon the facts, a discretion to be exercised, and that an order made in the exercise of that discretion was not appealable. But that case is an authority, that the defence of a discharge from indebtedness under the bankrupt law of the United States may be denied, where inexcusable delay in presenting the defence has intervened; which is in accord with decisions under the old practice. (3 Denio, supra.) It is also an authority, that where the facts of the case call for the exercise of the discretion of the Special Term, this court will not review the order made in the exercise thereof.
It is next to be seen whether, in the ease in hand, the order-appealed from was a discretionary order, or whether the facts of the case warranted the exercise of the discretionary power of the court. I do not think that the facts of the case make any ground for a charge against the defendants, of unwarrantable delay in seeking to interpose their new defence. The time during which delay must be sought for, to be brought against them on this motion, is that elapsing from the obtaining of their discharge until the noticing of the motion. The discharge of one of them is dated the 5th of September, 1873, and that of the other 6th of January, 1874. The order in this action, to show cause, was obtained on the 9th of January, 1874. Uor was this the first attempt of the defendants to avail themselves in this action of the proceedings in the bankruptcy courts. The proceedings in bankruptcy were begun in October, 1872, against one and by the other of the defendants, and they moved for a stay of proceedings in this action pending the application in bankruptcy for a discharge. It thus appears that the defendants *239 were diligent to avail themselves, in this action, of the bankruptcy proceedings. Nor does it appear in the case that the order denying leave was based upon an allegation of laches. Nor can it-be claimed that the matter of defence now sought to be interposed is open to the objection that it is fraudulent. It is upon its face the action of a court, the final judgment of it, by which it has granted the defendants a discharge from their debts. No fraudulent practice is alleged to have been used in obtaining the discharge, even if such a question would be tried upon affidavits. The courts below put the denial of the order on the ground that the plaintiffs had obtained a lien by attachment, upon property of the defendants, over four months before the granting of either- discharge ; that thus a lien had been obtained which would be unaffected by the bankrupt law; that the defendants having given an undertaking with sureties, that property was released from attachment; that if now this defence is permitted no judgment is likely to go against the defendants, and the sureties in the undertaking will be relieved from the letter of their obligation; for that by its terms is not broken until a judgment is recovered by the plaintiffs; but that the undertaking of the sureties is to be held in legal contemplation to be a part of and in continuation of the attachment proceedings, and a substitute for the levy made thereunder. I understand this to be putting the denial of the motion on the ground that the giving of the undertaking is a substantial continuation of the lien on the attached property, and that a discharge is not a bar in such a case. Without any consideration of the question on which the courts below and the court in Massachusetts in Carpenter v. Turrell (100 Mass., 450), are at variance, it is quite certain that the effect of this defence if interposed, will be to deprive the plaintiffs of a fair and honest advantage, they had obtained by their diligent pursuit of legal means and remedies. And there is presented to the courts a strong case of an injustice to be wrought by the forms of law if this plea is received. It is said that it is the rightfully overbear *240 ing effect of the federal law upon the State law and practice, and that the discharge from the debts having been given to these defendants in pursuance of paramount law, the courts of this State must give full effect to it. But is that just the position in which the courts of this State are placed ? First; the courts are not denying to the discharge its appropriate effect, after it is in due form and regularity brought to '.their judicial knowledge. They cannot, upon motion and upon affidavits, allow the effect of this discharge upon the debts claimed by the plaintiffs and adjudge that the defendants go thereof without day. The discharge must be brought before the court to be available for a final judgment thereon against the plaintiffs, upon a formal averment thereof by answer, with a day to the plaintiffs in court to contest its validity and to put the defendants to their proof. As yet it is a thing asserted, not proven. And the application to the court is for leave to plead and prove it, after the defendants have raised other issues, have to some extent tried them, and have taken other proceedings in the action hostile to the plaintiffs. Hay not the courts say that here is a case for the exercise of the discretion reposed in us, to determine whether the leave to put in this new defence would not work injustice to a party to a suit ? Hay they not say, we decline to permit a new issue upon the record in this action, which, if it should be tried,. might defeat the plaintiffs, and deprive them of a proper advantage which they have lawfully obtained % If it has been shown that the courts had the right to order from their files, under the old practice, a plea puis darrien, the prevalence of which in the suit would be an injustice to the plaintiff, and that the courts under the new. practice may reach the same end by refusing leave to put in such a plea, then is not this a case which gives room for the exercise of discretion whether the power so to do should not be used ? Again ; a discharge is not a bar to an action in any stage without being pleaded (Cornell v. Dakin, 38 N. Y., 253), and if the defendant is too late to plead, either originally or by amendment, the remedy it seems, is by motion for a perpetual *241 stay of execution. (Monroe v. Upton, 50 N. Y., 593.) So that the defendants are not without reasonable opportunity to present their discharge to the courts of this State, and obtain for it the effect to which it is entitled. Moreover; though the discharge should be effectual to bar an ordinary claim, or even the claim of the plaintiff in the position in which it was when the defendants obtained their discharge, still it is against the spirit of the bankrupt act that this debt should be thus affected. The plaintiffs were lien-creditors at one time and would have so continued, but for the defendants’ availing themselves of' a privilege given by the statute of this State, which the bankrupt act did not afford to them. The plaintiffs acquired their lien more than four months before the commencement of the defendants’ proceeding in bankruptcy. Such a lien, the bankrupt act exempts from the operation of the assignment of the bankrupts’ effects, and had the attachments remained undischarged, the plaintiffs would have held their debt secure.
It is said, that if the defendants are not permitted to plead their discharge, and judgment goes against them, then the obligation of the sureties will be fixed, and they, paying their undertaking, will have a claim against' the defendants, not barred "by the discharge. Without inquiring if this be so, let it be conceded. This too is in the spirit of the bankrupt act, for no discharge releases a person liable for or with the bankrupt, as a surety; and if not released, and compelled to pay after discharge, he must have a good right to call upon his principal, the bankrupt, as the sureties will in this case. The sureties were permitted by the bankrupt act to prove any debt for which they were liable if the creditors did not. And see how far the courts have gone, to sustain the right, got by acquiring a lien. In Peck v. Jenness (7 How. [U. S.], 612), it was held, under the bankrupt act of 1841, that a lien by attachment, was one saved by the provisions of that act, that though a discharge had been granted to the attachment debtor, and had been pleaded by him, that it did not affect the lien nor prevent the plaintiff from taking a qualified *242 judgment condemning the attached property, though a discharge had been pleaded, and the bankrupt act provided that it might be pleaded in full and complete bar to all suits. This case shows that the strict letter of a section of the act was made to yield to the provisions and policy of it in relation to prior liens. On the whole it seems that the spirit of our own statute, and the spirit of the bankrupt act will be satisfied, and that injustice will be avoided, if this case shall be put in the class of those in which it is discretionary with the courts to refuse leave to put in a supplemental answer.
It follows that the appeal from the order should be dismissed with costs.
■ All concur, except Rapallo, J., not voting.
Appeal dismissed.