Sanford, J.
The plaintiff, tenant under a lease from defendants and holding over after default in the payment of rent, was dispossessed of the demised premises, on September 4, 1874, by virtue of a warrant issued under the act authorizing “ summary proceedings to recover the possession of land” (2 R. S. 515, § 39). The warrant was duly executed, and the landlords, defendants in this action, were on that day put into full possession. The act (section 43) declares that “whenever a warrant shall be issued as aforesaid,” “ the contract or agreement for the use of the premises, if any such exists, and the relation of landlord and tenant between the parties, shall be deemed to be canceled and annulled.” It was held, in Hinsdale v. White (6 Hill, 507) that this provision annuls the lease from the time of the default for which the warrant issues. The lessor, as owner of the reversion, on resuming possession, is in as of his former estate, and the lessee becomes absolutely divested of all estate in the land. But in this case, inasmuch as the unexpired term of the lease under which the premises were held, exceeded five years at the time of issuing such warrant, the plaintiff, by virtue of chapter 240 of the Laws of 1853, still has the option and privilege, at any time within one year after his eviction, of paying or tendering to the lessors, their representatives or attorney, or to the. officer who issued the warrant, all rent in arrear to the time of such payment or tender, and all costs and charges incurred by the landlords, and in such case, of having the premises restored to him, and thereafter holding and enjoying the same, without any new lease thereof, according to the terms of the original de *388 mise. I do not regard this provision as a repeal of section 43, above referred to.
Its effect is rather, upon compliance with the condition, to create anew a relation of the same character with that which was canceled and annulled, and to effect a demise, by operation of law, commencing from the date of such compliance, and continuing thereafter, during the term, and upon the same conditions as prescribed by the original lease. It-is not claimed or pretended that payment or tender was ever made by the . plaintiff to the defendants, or their attorney, or to the officer who issued the warrant; but in April, 1875, the plaintiff commenced this action, in the nature of a .suit in equity, alleging, among other things, in his complaint, that on the first day of May, 1874, and thereafter until the present time, the premises were occupied by sub-tenants of his, who had severally agreed to pay rent therefor to him, that such rent due from such sub-tenants exceeded the amount of rent due from him to the defendants, with all costs and charges incurred by them; that on March 8,1875, he démanded of defendants an account showing the rents collected by them, and the amount due to them from himself ; that such demand was not complied with; that he thereupon tendered to them an account showing that upon crediting him with the rents payable by such sub-tenants, no rent due from himself remained in arrear; that such account was received and retained by defendants without objection ; that he is therefore entitled to possession, and has demanded that the premises be restored to .him.
The complaint concludes with a prayer for the restoration of the premises, for an accounting with respect to such rents, and for a money judgment for such sum as, upon such accounting, shall be found due and payable to him.
The novel and ingenious theory upon which this *389 action proceeds, involves the proposition- that when the legislature, in clear and precise terms, singularly free from ambiguity- or uncertainty, has prescribed conditions upon which an estate may vest, a court of equity, in the absence even of an attempt at compliance, and without so much as an offer to comply, or the suggestion of an excuse for the omission, may accept something else in lieu of the condition imposed,—the commencement of a chancery suit, for instance, of indefinite duration and doubtful result,—as an equivalent substitute for an immediate money payment; and, by the inherent authórity of its own arbitrary decree, may declare the estate vested, thus overriding the manifest purpose and intent, as well as the literal requirements of the statute. A somewhat similar view of the province and the scope of equity jurisdiction was suggested to this court in- the case of Durgan v. Hogan (1 Bosw. 645), but was promptly and decisively repudiated, in terms which I have, to some extent, adopted.
It is possible, that after the fulfillment of the statutory requirement and the establishment of plaintiff’s rights by actual payment and acceptance of the rent in arrear, an equity may arise which will entitle him to an accounting (Crawford v. Waters, 46 How. Pr. 210); but I am wholly unable to discover such equity in the allegations of the complaint in this cause, or in the proofs adduced at the trial.
Upon the trial it appeared that upon the execution of the warrant, every sub-tenant of the plaintiff was, in point of fact, removed from the premises, and that new agreements were thereupon entered into between the defendants and each of such sub-tenants with respect to the future occupancy of their several tenements. Can it be seriously maintained that the landlords were under an obligation to the plaintiff to retain such sub-tenants for a year, or that, after having been removed, they, or either of them, were under the-slight *390 est obligation to any one to return % It is contended on behalf of the plaintiff, that during the year the estate and possession of the landlords were closely analogous to those of a mortgagee in possession', and that they held the lands in trust for their evicted tenant. There is a“t least this distinction in the two relations; that the mortgagor is still liable for the mortgage debt and accruing interest, notwithstanding that possession is in the mortgagee while the evicted tenant, with his lease canceled and annulled, is- burthened with no covenant to pay rent, and, indeed, is under no liability whatever. If the analogy hold good in respect of the results deducible from it, he may idly fold his hands, .and speculate upon the diligence of his trustee, reaping a rich reward therefrom, if the season prove prosperous, and the harvest be abundant, but turning on his heel if the crop should chance to fail.
It further appeared on the trial that the alleged account rendered by plaintiff, made up in manner and form as stated in the complaint, was never accepted or acquiesced in, but, on the contrary, was disapproved and disavowed ; and that the net income actually realized by the defendants fell short of the plaintiff’s rent in arrear; that no such laches in the care and management of the property was shown as would entitle plaintiff to charge defendant with a rental in excess of their actual receipts, much less with a rental equivalent to that for which his sub-tenants would have been liable to him but for his default and eviction, even were the defendants accountable to him, upon principles applicable to the case of a mortgagee in possession.
But I am of opinion that the act of 1842 (4 Edm. Stat. at L. 661), was correctly construed by Judge In-graham, in the case of Waters v. Crawford, and by Judge Fancher in another suit between the same parties, cited above, and entitled Crawford v. Waters (the latter case reported in 46 How. Pr. 210). In the case *391 first cited, Judge Ingraham held that “the lessee must tender all rent in arrear at the time of such payment or tender.” “There is nothing,” he says, “in the statute which provides for the reduction of the rent in arrear by crediting rents subsequently collected by the owner. What may be the liability of the landlord to account to the lessee after he regains the possession is not necessary now to be decided ; but it is not provided in this statute that any such credit should be given before the lessee obtains the restoration of the lease.
“The provision which allows the tender to be made to the officer who issued the warrant, as well as to the parties, shows, that it was not intended that any inquiry should be made as to these credits. He could know from the lease the rent in arrear, and also the amount of costs on the proceedings before him. That he was authorized to receive, but he could not ascertain the amount of rent collected afterwards or the necessary amount of repairs.” It may be added, in this connection, that the tender or payment authorized to be made to the lessor, his representatives or attorney, is one and the same.
Whatever ground there may have been, in the case cited, for relieving the plaintiff therein from the legal consequences of his omission to comply strictly and literally with the requirements of the act,—for it would seem from the report of this case on appeal (Waters v. Crawford, 2 Supreme Ct. R. [T. & C.] 602), that the supreme court in the second department, after a transfer of the case thither in consequence of a division of opinion on the part of the court here, came to the conclusion that he might be relieved,—no ground is suggested for an equitable interference of like character in the case now under consideration. There performance was in good faith attempted, and there was in reality a partial performance of the statutory condition.
*392 Here the obligation to perform is denied and repudiated.
The plaintiff, in effect, refuses to perform.
The principle upon which courts of equity interfere to prevent or to relieve from forfeitures threatened or incurred, in cases of fraud, accident, mistake, surprise, or even of excusable neglect, where compensation can be awarded, is familiar.
That principle was recognized and acted upon by this court in Garner v. Hannah (6 Duer, 262), and in Giles v. Austin (38 N. Y. Superior Ct. R. 215, 235). In Haywood v. Angell (1 Vern. 233), the lord keeper said that “in all cases where the matter lies in compensation, be the condition precedent or subsequent, there ought to be relief.” An important difference, however, in this respect between the breach of a precedent and that of a subsequent condition exists, and was very clearly pointed out by Judge Cadwallader, of the United States circuit court, in the recent case of Bird v. The Penn Mutual Life Ins. Co. (Legal Intelligencer, Feb. 11, 1876).
“In the latter case,” he observes, viz., in that of the breach of a condition subsequent, “ relief may be given where compensation can be made, although the nonperformance of the condition has occurred through mere negligence, unless it has been willful or pernerse neglect.
“ But a court of equity does not in any case relieve against losses consequent at law upon the non-performance of a condition precedent, where such non-performance occurs through neglect alone.”
(See also Sugden on the Law of Property as administered by the H. of L. 556-579).
But upon this principle, it is difficult to perceive what relief can be afforded to the plaintiff, who has deliberately elected not to perform the condition upon performance whereof alone his restoration to his former *393 rights was made by statute to depend. He disclaims the obligation to perform, and insists upon a supposititious substitute for performance wholly unwarranted by the statute.
Arnoux, Ritch & Woodford, attorneys, and William Henry Arnoux, of counsel for appellant, in an elaborate brief, urged:
(1) That § 43 of art. 2, title 10, chap. 8, part 3, R. S.. was, so far as leases were concerned, having five years to run, repealed by chap. 240' of Laws of 1842. (2) That as a consequence, the possession of the landlord during the year was for the benefit of the tenant, and that he held in the character of a trustee. (3) That, consequently, the doctrines which obtained between a mortgagor and mortgagee in possession, a bailor and bailee, an owner and his creditor in possession under the English writ of elegit, applied to this case.
Van Winkle, Candler & Jay, attorneys, and Edgar S. Winkle, of counsel for respondents, Susan H. D’Hauteville as administrator, and Susan W. D’Auterville in her own right, and Belts & Robinson, attorney, and N. J. Morris, of counsel, for the N. Y. Life Insurance & Trust Co., in a well considered brief combated the propositions contended for by appellant’s counsel.
*393 His attitude is not that of a suppliant for the equitable interposition of the court to relieve from a forfeiture upon an offer of full compensation, but rather that of an injured suitor claiming as matter of right a judgment of the court, enlarging and extending the operation of a remedial statute, of whose liberal and beneficent provisions he has willfully refused to avail. I am not aware of any principle upon which such an exercise of equitable jurisdiction can be invoked or sustained.
Judgment must be rendered in favor of the defendants, with costs.
*394 By the Court.—Speir, J.
The defendants, the Trust Co. as trustees, and the others in their own right, took possession of the premises upon the plaintiff being evicted under the summary proceedings, and he brought his action in the nature of a suit in equity within the year for restoration, under the statute of 1842. In it he claims an accounting in respect to the rents which he alleges theretofore accrued and became due on the lease, and the "rents received subsequent to the eviction from the sub-tenants, and prays that the same may be determined, and credited to the amount due to the defendants; and if, upon sudh accounting, it shall be found that any moneys are due to the plaintiff by defendants, he may have judgment for such-sum, and judgment restoring the premises to him, to be occupied according to the original demise.
To sustain this action, proof should be made that the plaintiff has complied with the requirements of the statute upon which he relies for the restoration of the premises to him as lessee. Within one year after the delivery of possession to the landlord, he must pay, or tender to the lessor, his representatives or attorney, or to the officer who issued the warrant, all rent in arrear to the time of such payment or tender; and all costs and charges incurred by the landlord.
The defendants moved upon the plaintiff’s case to dismiss the complaint, which was denied. An accounting was then had on the trial, and the court found that no such payment or tender of rent in arrear, costs and Charges were made either to the defendants, their representatives or attorneys, or to the magistrate who issued the warrant, and no tender of anything, excepting tender of a certain account.
This account was constructed by charging the de *395 fendants with certain amounts which had been provided in a contract between the plaintiff and one William Stuart, whereby the plaintiff was to build a certain theatre, and lease the same to Stuart, though Stuart had never paid the plaintiff any amount whatever ; but had sued the plaintiff for damages for breach of this contract to build and lease. It cannot be claimed that these moneys received by the owner in his own right from other parties can form any part of the rent due to the evicted lessee on his lease. Nor can the evicted lessee make tender by including in the sum offered, any amount received by the owners above supposed expenditures.
The statute under which the eviction was had provides that upon the issuing of the warrant, the contract or agreement for the use of the premises, if any such exist, and the relation of landlord and tenant, between the parties, shall be deemed to be canceled and annulled. The language of both statutes is too plain for either interpretation or construction. The words embody a precise and definite meaning apparent upon the face of the statutes. Moreover the question has been determined in a judicial way, and the parties and their proofs have been heard, and their rights settled by a judicial determination. When this has been done, the determination is conclusive upon the parties until reversed, vacated, or set aside in the form prescribed by law. This is a principle of universal application, and results from the judgment of dispossession in the summary proceedings. It extends alike to the decisions of the highest court, and the humblest officer of the State entrusted with the exercise of judicial powers (White v. Coatesworth, 6 N. Y. 143). The effect of the judgment and its execution therefore is that the lessee is divested of all right to and control over the property, and the owners are in possession as of their former estate, as owners of the reversion. While the lease re *396 mains canceled, the lessee has no right to the possession of the premises, and no right of action in relation to them until he shall have established such right by payment or tender as prescribed by statute.
The plaintiff claims to be released from this duty and obligation, imposed by the statute, of payment or tender, on the ground that the latter statute of 1842 repealed the prior statute, which declares that whenever a warrant shall be issued in a summary proceeding, “ the contract or agreement for the use of the premises and the relation of landlord and tenant shall be deemed canceled and annulled,” so far as it applies to leases having an unexpired term of five years at the time the warrant issued.
The repeal of this part of the statute is made the basis of the counsel’s argument in support of his views of the law of the case.
It was doubtless the intention of the legislature in passing the statute to relieve the tenant from the harsh severity of the law of 1820.
Leases having more than five years to run might become and frequently were generally very valuable, owing to the increased value of the land and improvements made in contemplation of the enjoyment of a long term. In case the tenant became unfortunate and failed to pay an installment of rent while in possession during the first five years of the demised premises, the dispossession was supposed to work a very considerable hardship.
The question therefore is one of intent in framing the statute.
Ordinarily express language is used where a repeal is intended, and a repeal by implication is not favored. In Bower v. Lease (5 Hill, 225), Nelson, Ch. J., said, “ The invariable rule of construction in respect to the repealing of statutes by implication is, that the earliest, act remains in force, unless the two are manifestly in *397 consistent with and repugnant to each other; or unless in the latest act some express notice is taken of the former, plainly indicating an intention to abrogate it.”
The reason of the rule is that when the mind of the legislature has considered the object and details of the subject of the statute, and not in express language contradicting the- original act, the latter act shall not be considered as intended to affect the previous provisions of the former, unless it is absolutely necessary to give the latter act such a construction as that its words shall have any meaning at all.
It appears that the mind of the legislature was pointedly turned to the intention it had in view in framing this act of 1842.
The legislature therefore repealed an amended act, passed April 25, 1840—being an amendment to subdi-. vision 2 of section 38 of chapter 8 of title 10 of the third part of the Revised Statutes. The amended act which was repealed was to the effect that subdivision 2 should not be construed to apply to any lease, the unexpired term of which should not exceed five years. The attention of the legislature was therefore called to the necessity of repealing so much of the act authorizing summary proceedings as regarded leases exceeding the term of five years ; and it follows that in its judgment no further repeal was necessary. The right of payment or tender is not alone limited to the tenant. Provision is made for the mortgagee and judgment creditor, either of whom may pay the rent in arrear. This right they get in the same way as the tenant—by the force and sanction of the statute. The statute itself cancels the lease .upon eviction, and the lessee has no right of action while the lease remains canceled.
Payment or tender of the rent in arrear must be the first step taken towards restoration, and until that be done no right of action accrues. The lessee has no standing in court, as against the owner, in respect to *398 the premises, until he establishes such right as prescribed by statute, by making payment or tender.
He has therefore, ho right to an accounting of the profits received by the owner under the statute, and if not under the statute, he cannot have it in equity. If the law commands or prohibits a thing to be done, equity cannot enjoin the contrary, or dispense with the obligation.
The general term of the supreme court, in Waters v. Crawford, 2 T. & C. 602, decided that under the prayer for general relief, the plaintiff was entitled to an accounting. The decision was put upon the ground that the prayer for general relief was equivalent to a special prayer for redemption.
The special term had decided that the plaintiff was not entitled to an account, and I think in that case, the general term rightly held that was error. The accounting might have presented such a case as would .have entitled the lessee to redeem under the statute. That was quite unlike the present case. There was a partial performance of the statutory condition to make payment or tender, and the plaintiff in good faith undertook to perform, but misapprehended the construction Of the statute.
Here, although no attempt to perform the statutory requirement was made, the court allowed the accounting to take place, and upon the facts ascertained held that the plaintiff had no case.
The judgment of the special term must be affirmed with costs.
Curtis, Ch. J., and Sedgwick, J., concurred.