MENI *et al. v.* RATHBONE *et al.*

NOTICE—ADVERSE POSSESSION.—Where, at the time an interest is acquired in real estate by one person, it is in the actual possession and use of another, under a claim of title, the person acquiring such interest should take notice thereof, and make inquiry.

NOTICE—REGISTRY.—The record of a conveyance, which was not recorded within the period prescribed by law, but was recorded thereafter, would constitute notice to all purchasers after the conveyance was so placed upon the record.

LANDLORD AND TENANT—LEASE.—The right of a landlord to re-enter, for breach of a condition subsequent, is not viewed with favor in the law, and, where he claims a forfeiture, he must show that he has done everything required on his part to perfect such right of re-entry.

SAME—LEASE—CONDITION.—Where a lease is conditioned that, "if default shall be made in any of the covenants therein contained on the part of the lessee, then such lease shall be deemed forfeited, and it shall be lawful for the lessor to re-enter said premises and remove all persons therefrom," and one of the covenants on the part of the lessee requires him to pay all taxes assessed against the premises, and he fails to pay the same, the lessor can not take advantage of the breach of such covenant to forfeit the lease without first demanding or requesting the lessee to pay such taxes.

PLEADING—ALIEN ENEMY.—An answer, which avers that the defendant is informed and believes the plaintiff has been and now is engaged in, inciting, aiding, and assisting in the rebellion of the so-called *Confederate States* against the *United States* and the Constitution and laws thereof, and has been and now is giving aid and comfort to the so-called *Confederate States*, is defective and demurrable, for not stating more specifically the particular acts of rebellion which the plaintiff has committed.

WITNESS—HUSBAND AND WIFE.—As to the admissibility of the testimony of the husband in a case in which he and his wife are both parties, and she claims an interest in the subject matter in contro-

Meni et al. *v.* Rathbone et al.

versy, under a given state of the pleadings and evidence, the reader is referred to the latter part of the opinion.

APPEAL from the *Vanderburgh* Circuit Court.

HANNA, J.—Action by the appellants against *Rathbone* as execution plaintiff, and *Gavitt* as sheriff, to enjoin the sale of a lot, or any interest therein, in the city of *Evansville*, as the property of *John M. App.*

The complaint alleges that the fee simple of the lot is in *John Wise*, that said *App* had no interest therein, and that the plaintiffs by virtue of a lease, of which a copy is set out, are owners of an unexpired term in said lot, and are in possession thereof.

*Rathbone* and *Gavitt* answer, showing an outstanding conflicting term in *Mary App*, under a lease which is set out and alleging in substance that *Mary App* held the term under the lease in trust for *John M. App*, her husband, who fraudulently procured the same to be made to her to prevent the collection of *Rathbone's* judgment; that *App* went into possession of the premises and built houses thereon, and remained in possession of the same, and that the lease to the plaintiffs was not only made while the term in *Mary App* was subsisting, but made by the fraudulent procurement of *App*, and that therefore the interest of *App* subsisting in the term created by the lease from *Wise* to *Mary App* was subject to sale on *Rathbone's* execution.

Prayer that *Wise* and *App* and his wife be made parties and that the property be subjected to sale, &c.

Upon the filing of the answer, *Wise* and *App* and wife were made defendants.

A demurrer to the answer was overruled, whereupon the plaintiffs filed a reply in one paragraph to which a demurrer was sustained, and upon leave they filed an additional reply, in substance the same as the first, both attempting to set up

Meni et al. *v.* Rathbone et al.

a forfeiture of the lease to *Mary. App*, for non-payment of rent and taxes; but the Court also sustained a demurrer to the additional reply. At this stage of the proceedings, *App* and wife and *Wise* appeared and answered, but their answer was afterwards withdrawn, and *App* filed a separate answer to the answer of *Rathbone* and *Gavitt*, to which a demurrer was sustained. The death of *Gavitt* was suggested, and judgment rendered upon demurrer against *John M. App*, and by default against *Wise* and *Mary App*. The plaintiffs filed a reply in denial of the answer of *Rathbone* upon which a jury trial was had, resulting in a verdict for the said defendant, upon which, over a motion for a new trial, the Court rendered judgment. The assignments of error which are insisted upon are as follows:

1. Overruling the demurrer to the answer of *Rathbone* and *Gavitt*.

2. Sustaining the demurrer to the reply.

3. Sustaining the demurrer to the additional reply.

4. Sustaining the demurrer to the answer of *App*.

5. Excluding the testimony of *App*.

6. Giving the instruction asked by *Rathbone*.

The answer of *Rathbone* and *Gavitt* contained some matters in the way of cross petition, to the effect that *App* was the owner of a certain interest in said lot; that the same was fraudulently held in the name of his wife; praying that new parties be made and the lease to plaintiffs set aside as fraudulent, &c.

It is urged that the demurrer ought to have been sustained to this answer, because it does not sufficiently show that all the parties had such notice as would affect them with the fraud charged upon *App*, and because the lease from *Wise* to *Mary App*, although executed on the 20th day of *August*, 1856, was not recorded until the 16th day of *May*, 1857.

It is averred in said answer, that the contract of leasing

was made by *App* and *Wise*, and that, to hinder and delay, &c., creditors, said *App* caused the lease to be executed to his wife; that the lot was vacant; that he took possession immediately, and in the years 1856, 1857, 1858, and 1859, erected and completed improvements in the way of sundry buildings and tenements, of the value of 3,000 dollars, and of the annual rental value of 600 dollars, which he has heretofore received; that said lease and improvements belong to said *John M. App;* that the judgment being older than the lease is prior lien thereon.

The lease from *Wise* to *Mary App* was for the term of 10 years, and the yearly rent reserved was 75 dollars, for the vacant lot. The lease from *Wise* to plaintiffs was for 6 years and 3 months, at the same rate. It is charged in the answer, that this latter lease was made by the procurement of *John M. App*, to cheat, &c., said *Rathbone*, and is fraudulent.

It appears to us that, *prima facie*, the facts alleged are sufficient to put all parties upon inquiry, if not full notice. The judgment against *App* was older than the first lease; the property was possessed and improved by said judgment defendant, and the rents received by him, for 3 years and 9 months; the exact balance of the term was let by *Wise* to plaintiffs at the same rate the vacant lot was let, although it had been improved and would rent as shown.

Neither the complaint nor the answer avers directly who was in possession of the said property, at the time the second lease was executed; but the answer does aver that *John M. App* had taken possession under the first lease; made improvements and received rents. If there was any inference about the matter, perhaps, it would be that he was still in possession. If so, the plaintiffs should have taken notice thereof, and made inquiry.

The appellants insist that the lease to *Mrs. App*, not having been recorded in proper time, is not notice for any pur-

pose to any person. Section 11, page 233, 1 Revised Statutes of 1852, enacts, "that no conveyance, &c., and no lease for more than 3 years, shall be valid and effectual against any person other than the grantor, his heirs and devisees and persons having notice thereof, unless it is made by a deed recorded within the time and in a manner provided in this act." Section 16, of the same act, provides that every conveyance, lease for more than 3 years, &c., shall be recorded in the recorder's office of the county where the lands conveyed shall be situated, and, if not so recorded within 90 days from the execution thereof, shall be fraudulent and void as against any subsequent purchaser or mortgagee in good faith for a valuable consideration.

It will be observed that section 11 quoted, declares that no lease, &c., shall be valid, &c., against any person other than * * * "persons having notice thereof," unless it is made by a deed and recorded, &c. And section 16 provides that, if not so recorded, they shall be fraudulent, &c., as against subsequent purchasers, &c., in good faith, for a valuable consideration.

The substance of this, it appears to us, is that an unrecorded deed is inoperative as against a subsequent purchaser in good faith, &c., for a valuable consideration without notice. What are our registry acts for? To give notice of existing titles and incumbrances. If the construction insisted upon by the appellants, is correct, then a deed, &c., should not go upon the records, unless placed there within the time designated by the statute. For it could be no notice to one who should purchase, even after it was so recorded. This construction we can not adopt; we think a man could not be considered as standing in the position of a purchaser in good faith, who should buy and take title in view of a recorded deed of an already outstanding title; but that he would be buying with notice. That is, that the record would be notice to subse-

Meni et al. *v.* Rathbone et al.

quent purchasers. We are not now considering the effect of a purchase, after the expiration of the 90 days and before the deed was placed upon the records; but of one made after it was so recorded. And therefore the whole question is whether such record is any notice, or rather is it sufficient notice, or should actual notice be given, of said outstanding title, under said 11th section, to make it effectual? We are of opinion that such record is notice to purchasers who may take title after the same is made.

The second error assigned is the sustaining the defendants' demurrer to the plaintiffs' reply; but, as the questions arising on this assignment are similar to those arising on the third error assigned, which is the sutaining defendants' demurrer to additional reply of the plaintiffs, it is proposed to consider both together.

The reply denies all the imputation of fraud charged in the answer, and then sets up that the leased premises were within the corporate limits of the city of *Evansville*, and that *Mrs. App* failed to pay the rent reserved in the lease for the years 1858 and 1859, and failed to pay the taxes for the years 1858 and 1859, assessed on the lot by the corporate authorities of *Evansville*, whereby the lease, by its terms, became forfeited, and, by reason thereof, the defendant, *Wise*, afterwards entered upon the premises, and then and there demanded payment of said rent and taxes of the said *Mary App*, which were not paid, whereupon *Wise* repossessed himself of the premises, by taking actual possession thereof, and made to the plaintiffs the lease under which they claim.

The additional reply of the plaintiffs also denies all the charges of fraud as to them, in the defendants' answer, and avers that the junior lease, from *Wise* to the plaintiffs, was made in good faith, and at their request, and without the procurement of *John M. App;* that it was made after a forfeiture, by *Mrs. App*, of her lease, and after *Wise* had again

repossessed himself of the premises, and that the plaintiffs took their lease from *Wise* while he was in the actual possession of the premises, and without any intention on their part to cheat or defraud the said *Rathbone;* that on the 20th day of *August,* 1856, *Mary App,* wife of the said *John M. App,* leased the premises from the said *John Wise,* (a copy of which lease is filed with the answer); that there is in said lease the following covenant, to-wit: "and it is agreed, that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then this lease shall be deemed forfeited, and it shall be lawful for the said party of the first part to re-enter said premises, and remove all persons therefrom;" that said *Mary App* failed, neglected, and refused to pay the rent due the said *Wise* on said premises, and which accrued from the 20th day of *February,* 1859, to the 20th day of *May,* 1860, amounting to 92 dollars and sixty-five cents; that on the said 20th day of *May,* 1860, said *Wise* went on the said premises, and at the front door of the dwelling house, situated on said premises, in which said dwelling house the said *John M. App* and his wife then resided, and then and there demanded payment of the rent then due to him on said lease from the said *Mary App,* and payment thereof was then and there refused, and neither the said *Mary App,* nor any other person for her, paid said rent, or any part thereof. And the plaintiffs further say, that, by the terms of said lease, the said *Mary App* covenanted and agreed to pay and discharge all taxes and assessments of any kind and description during the whole of said tenancy; that the premises are situated in *Evansville,* within the corporate limits of that city; that for the years 1858 and 1859, to-wit: on the — day of —— of each year, there was, by the proper authorities of the city of *Evansville,* a large amount of taxes assessed and charged upon said property, to-wit: the sum of 100 dollars; that neither the said *Mary App,* nor any other person

for her, paid said taxes, and thereupon the said property, in pursuance of the statute in such case made and provided, was, by the officers of said city, according to law, for the payment of said taxes, sold to *Robert Early* and *Thomas E. Garvin*, who, on the said 20th day of *May*, 1860, had and held a certificate of purchase from the treasurer of said city for said premises; that on the same day, the said *Wise* went to the said *Mary App*, at her residence on said premises, and then and there requested her to pay off and discharge said taxes, which she then and there failed, refused and neglected to do, and thereupon the said *Wise* demanded possession of said premises, and then and there, with the consent of the said *Mary App*, and *John M. App*, her husband, took actual possession of said premises, and then and there, in the presence of said *App* and his wife, in good faith, leased the said premises to the plaintiffs, as stated in the complaint, and thereupon the plaintiffs took actual possession of the premises under their said lease, and ever since have been, and now are, in the actual possession of said premises, and that, so the plaintiffs say, the said *John M. App* has no interest in said premises.

The appellants insist that the demurrers to the reply and to the additional reply should both have been overruled.

The ground upon which the demurrer to these replies was rested is, that, to be able to avail himself of the somewhat harsh terms of this forfeiture clause, the land sold should be in a condition to show that he had strictly performed all the technical prerequisites necessary to fix such forfeiture, and, it is contended, that these replies do not show such acts upon the part of the said *Wise*.

It is conceded, in appellants' brief, that, as to the rent, the replies are (neither of them) specific enough, in the averments as to him and place of demand thereof. But it is zealously contended, that, in regard to the taxes and assessments, the replies are good; and quite a lengthy argument is presented

to controvert the doctrine and conclusions of the Courts, in the cases of *Johnson* v. *Harrison*, 17 Johns. R. 66; *Bowman* v. *Foote*, Am. L. Reg. for *April*, 1862, p. 352; *Merrrfield* v. *Cobleigh*, 4 Cush. 178.

The right of a landlord to re-enter, for breach of a condition subsequent, is not viewed with favor in the law; and where he claims that a forfeiture has occurred, and his right attacked, it devolves upon him to show that he has done everything that was required upon his part to perfect such right of re-entry, rather than resort to an action for damages for a breach of such covenants. It is urged, that by the clause of the lease quoted, the right of *Wise* to re-enter, upon the failure of the lessee to pay taxes, is secured; and that without any previous act upon his part; that therefore there was no affirmative act, precedent to this act of re-entry, necessary upon the part of said *Wise*—such as demand that the taxes should be paid, or notice that he would re-enter, if they were not so paid.

In the form and order in which the reply set up the failure to pay the taxes, and the sale of the premises therefor, it would appear that the request made by *Wise* of *Mary App*, to pay said taxes, was made on the same day, but subsequent to said sale. If such a demand or request was necessary, it was not made of the right person. We are of opinion that such a request was necessary. Some difficulty was presented in considering the averment that *Wise*, on the day of the sale for taxes, took actual possession of the premises, with the consent of *App* and his wife, and, in their presence, leased them to the plaintiffs.

It appears to us, that, as the answer showed that the judgment, upon which the execution issued, was before that time existing against *App*, and avers facts, which, in connection with those set forth in the complaint, showed that said judg-

ment was then a lien upon the same as *App's* property, he could not thus divest that lien.

The next point arises upon the ruling of the Court in sustaining a demurrer to the separate answer of the defendant, *App.* As the answer is lengthy, and the substance is stated in the appellants' brief, we extract that statement, together with the reference, &c., to the act of Congress:

*App's* answer admits the rendition of the judgment in favor of *Rathbone*, on the 9th day of *March*, 1855, but says it was rendered for the use of *T. C. Twitchell & Co.;* that said firm consisted of *Safronas Twitchell*, *Timothy C. Twitchell* and *Elisha H. Fairchilds;* that the said *Twitchells* and *Fairchilds* are now, and were at the time of the rendition of said judgment, and ever since have been, residents of the city of *New Orleans*, in the State of *Louisiana*, and are now, and ever have been, the sole owners of said judgment, and the real parties in interest in said claim, upon which said judgment was obtained; that the said *Rathbone*, whose name appears in said judgment, was merely a trustee for said *Twitchell & Co.*, and had not, and has not now, any interest in said judgment; and that the said *Twitchells* and *Fairchilds* have been, and are now, engaged in, and inciting, aiding and assisting in the rebellion of the so-called *Confederate States* against the *United States*, and the Constitution and laws thereof, and have been, and are now, giving aid and comfort to the so-called *Confederate States;* and, therefore, the said *App* says that the said *Twitchells* and *Fairchilds* should not be permitted to have and collect from him the amount due on said judgment; wherefore he prays that the said *Timothy C. Twitchell* and *Safronas Twitchell*, and *Elisha H. Fairchilds*, may be made parties to this suit, and that they may be restrained, enjoined, and prohibited, from further prosecuting said claim against him in any way, or in any way attempting to collect the same, and for other proper relief.

This plea is based on the act of Congress of *July* 17, 1862, entitled, "an act to suppress insurrection, and to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes." The 6th and 7th sections of this act, it is urged, confiscate this judgment, and authorize the pleading of the rebellious conduct of the owners of the judgment in bar of any suit brought for the possession or use of the property, or effects liable to confiscation; and that the 7th section enacts, that it shall be sufficient for the person from whom the recovery is sought, to allege and prove that his adversary is one of the persons described in that section. The answer shows that *Rathbone* is the mere trustee for *Twitchell & Co.*, and, as such, is seeking to make the money. The answer of *App* is verified by affidavit.

Previous to filing this answer, *App* had filed another answer, the character of which is not shown, but had withdrawn the same. Whether the answer filed in the second place is in the nature of an answer in abatement, and whether, if so, it came too late in this case, we shall not discuss, as it appears to us there is another point upon which it is clearly bad. Said defendant avers "that he is informed and believes the said *Twitchell*, &c., are now, and for a long time have been, engaged in and inciting, aiding and assisting in the rebellion of the so-called, &c., and have been and are now giving aid and comfort to the so-called *Confederate States.*"

The pleader was here dealing in mere generalties, and appears to have come to the conclusion that certain acts had brought the said persons within the purview of the said statutes; but what those acts were, he does not aver. In many instances, it is the province of the Court, not the party nor his attorney, to determine whether the acts which another has performed fall within the description of an offence in a statute. We think this is one of the instances.

There is no point made here as to the validity of the act, of which advantage is thus sought.

The next question is made on the ruling of the Court in excluding the evidence of *John M. App.* The decision appears to have been based upon the ground that he was the husband of *Mary App*, and that her interest as lessee was involved in and was the subject matter of the suit. The issue being tried was between the plaintiffs and *Rathbone.* Said plaintiffs, in substance, averred that the title to a certain interest in said property was in them and the fee in *Wise.* *Rathbone* averred that there was a superior outstanding title for a term of years in *Mrs. App* as trustee for *App*, and that the fee was in *Wise.* To this the plaintiffs filed a denial. Had *Mary App* such an interest in the determination of that issue as should have excluded her husband from testifying? *App* and wife, by failing to answer, had admitted the truth of the matters charged in the answer of *Rathbone.* But we do not suppose this legal admission, for the purpose of the suit, could deprive either of the remaining adversary parties to the action from the benefit of this evidence, if they were otherwise competent.

The appellee contends that the question of the competency of *App* as a witness is wholly immaterial, because there was no issue to which his testimony could have been applicable.

An inquiry into this question will also settle that as to the correctness of the instruction given, which was as follows:

"That the only material issue submitted to the jury is, whether the lease alleged to have been made by *Wise* to *Mrs. App* was made, executed and recorded according to law, and that the record of the lease read in evidence was sufficient proof of that fact, and that if the jury believe the lease was so executed and recorded, they should find for the defendant."

This was the only instruction asked by the defendant, or given by the Court; other instructions were asked by the

Meni et al. *v.* Rathbone et al.

plaintiffs and refused, touching the questions of fraud raised by the answer of *Rathbone*, and put in issue by the denial of plaintiffs.

The lease to *Mary App* having been made a part of the answer to *Rathbone*, and its execution, &c., not having been denied under oath, this instruction assumes that *Rathbone* might rely upon that to prove a title superior to the plaintiffs, and that such proof alone would defeat them. Is the position as a legal proposition correct, and if so, does *Rathbone's* record enable him to avail himself thereof?

One view is that if *App*, the execution defendant, had no interest, a levy and sale would convey nothing; but as the record was made as between *Rathbone, Wise* and the said *App* and wife, it would appear he had such interest.

The other view is, that if the title of plaintiffs is not a superior title, they can not maintain their suit and enjoin said execution plaintiff. They set up such title. In that the complaint is controverted by that part of the answer showing a conflicting title in a third person, but accompanied with the averment that it is held for the execution defendant. The controversy is, by the instruction, reduced to the simple question, whether *Rathbone* could abandon all other averments but those setting up a superior conflicting title in a third person, and rely upon that to defeat the action.

This is a statement of arguments in the briefs upon this point, and may or may not touch the grounds or reasons upon which the Court below based the instruction quoted.

It appears to us, in the absence of the evidence, and in view of the issue being tried, that the instruction of the Court was right for another reason, namely, that, by the facts shown in said pleadings, the lease was the property of *App*, and not that of his wife. A lease for years is a chattel real, and being less than a freehold, wanting duration as to time, is considered as personal estate or property; Blacks. Com. 2, B. 386; and

under our statute is not included under the word "land," or the phrases "real estate," or "real property;" 2 G. & H. 336; but is included in the phrase "personal property;" *id.;* that is, "chattels" are so included, without distinction being made between real and personal chattels. As by the common law, personal property acquired during coverture became the property of the husband, upon his reducing it possession; and as such act of possession and ownership are alleged in the answer, in the case at bar, the said chattel became and was the property of the husband, notwithstanding it was held nominally in the name of the wife. It was therefore subject to his debts, and the judgment against him was, by statute, a lien upon the said "chattel real." 2 G. & H. 264. The statute of 1852, 1 G. & H. 374, in reference to lands of married women, and that of 1853–57, in regard to the personal property of a wife, do not make any change of the said rule as to this property; because it was, so far as appears, acquired during coverture, and in a mode not provided for by said statute; that is, it did not come by "devise, descent or gift," and therefore the husband's rights therein remained as at common law. *Cox's Adm'r* v. *Wood,* 20 Ind. 59. As the title, attempted to be vested in the wife, thus enured to the benefit of the husband and became his, that part of the answer alleging that the execution of the lease to her was in fraud, &c., was, under the circumstances, surplusage, and could well be abandoned.

*Per Curiam.*—The judgment is affirmed, with costs.

*Conrad Baker, Charles E. Marsh* and *Thomas E. Garvin,* for the appellants.

*Asa Iglehart* and *A. L. Robinson,* for the appellees.