Summers, J.
On the twelfth day of June, 1875, the defendant, William A. Neil, being the owner in fee-simple of a lot in the city of Columbus, leased the same to John C. English, “in consideration of the sum of one dollar in hand to him paid, and of the rents, covenants and conditions hereinafter reserved and contained, to be paid, kept and performed by *428 said party of the second part, liis heirs, executors, administrators and assigns,” for and during the full term of ninety-nine years, and from the expiration of said term renewable forever.
After providing for the payment of rent in money on the day the same becomes due, without demand made for the same, on said day or at any other time, upon the premises •or elsewhere, and upon default thereof, for a termination of the lease and a right of re-entry at the election of the lessor, the lease contains the following, among other covenants and provisos: ‘'And further that said party of the second part, his heirs, etc., * * * shall and will in addition to the money hereinbefore, reserved as rent for said demised premises, also as parcel of the consideration of this demise and as further rent for the same, at his and their own proper costs and charges bear, pay and discharge when and as the same shall be made and become payable, all such duties, rates, taxes, charges, payments, water rents and assessments of every sort and kind soever, ordinary and extraordinary, general and special, as have been already, or that shall, during the term hereby granted, be levied, assessed, made, imposed, grow_ or become clue and payable upon, out of or for the said demised premises, or any part thereof, or upon said party of the first part, his heirs, executors, administrators or assigns for or in respect of said premises or any part thereof, Tor any purpose, or purposes whatsoever, by virtue of any present or future law or authorized action of the United States of America, the state of Ohio, the city of Columbus, or of any other lawful authority empowered to make, assess, levy or impose any such tax, assessment, charge or payment; and that'said second party, his heirs, etc., * * * shall and will so at all times hereafter well and truly indemnify, and save harmless said party of the first part, his heirs, executors, administrators and assigns, of, from and against any loss, cost, damage and expense which he or any of them may sustain *429 or be put to by reason of any neglect or omission in the due and punctual discharge of the said taxes, charges, duties and assessments or any of them.” “And it is further agreed between said parties that for the better securing the payment of the rents herein reserved and the performance of the covenants herein contained by said second party, his heirs, etc., * * * to be kept and performed, ” the party of the first part shall have a first lien paramount to all others, etc.
“And provided further and these presents and the term hereby created are upon this express condition, that if the said party of the second part, his heirs, etc.,, * * * shall fail in the performance of any or either of the covenants, agreements, conditions or provisions in these presents contained which on the part and behalf of said party of the second part, his heirs, executors, administrators or assigns are hereinabove agreed to be, or that are, or ought to be observed, performed, fulfilled and kept, then and in each and every such case and from thenceforth and at all times thereafter this present indenture and the estate and term hereby granted and every clause, article and thing herein contained on the part of said party of the first part, his heirs, etc., * * * to be performed, fulfilled and kept, shall cease, determine and be utterly void at the option and election of said party of the first part,” without prejudice to any remedies which might be otherwise used by him in collection of arrears .of rent and damage for preceding breach of covenant; and then follows a covenant to deliver peaceable possession, in case the lessor elects to declare the lease forfeited as previously provided, and a provision authorizing re-entry.
The rent to be paid Neil was $1,500 per year for the first ten years, and $2,000 per year thereafter. The lease was assigned to Albert Goldstein in 1886, and he on the 9th day of May. 1890, leased the premises to Eichenlaub for fifteen years at a yearly rental of $3,000 for the first five years, $3,500 per year for the second five, and $4,000 per year for *430 the last five years. Eichenlaub was to pay also all taxes and assesments levied or imposed from said date, excepting the assessments, then made but not yet due and payable, for the improvement of Pearl street in the rear of said premises. Eichenlaub took possession, and it is alleged, expended $20,-000 in erecting large, valuable and permanent buildings on the premises, consisting of store-rooms, theaters, offices and business rooms.
April 4, 1892, Goldsteiu mortgaged, his leasehold to Samuel Frank to secure bis note for $10,000, dated October 29, 1891, which is still unpaid. All taxes and assessments and rents due to Neil were paid up to June 20, 1892; thereafter the taxes and assessments, including those payable June 20, 1892, were not paid, and amounted, with penalties and interest, on the 9th day of January, 1894, to the sum of $2,328.88, and the premises were being advertised for sale at delinquent, tax sale. This casually coming to the notice of Neil, he, on that day, paid that amount to the treasurer.
Goldstein lived in Philadelphia, Pa., and Prank in Baltimore, Md.
Shorty before the 9th of January, Goldstein received a newspaper containing a copy of the delinquent tax list, and went to New York to raise the money among his friends, to pay the taxes.
Shortly after he returned he received a written notice of forfeiture from Neil; he at once communicated with Frank, and they met in Columbus on Monday, January 15, 1894, and tendered to the treasurer the said sum of $2,823.88, and, upon bis refusal, on the same day tendered said amount, with interest, to Neil, who refused to accept it, saying he had elected to forfeit the lease; and thereafter, on the 10th day of February, 1894, said Nefl brought suit in forcible entry and detention against Eichenlaub, to recover possession. And thereupon the plaintiffs, on the 17th day of February, *431 1894, filed their petition in this action in the court of common pleas, setting up the foregoing facts and tender of rent falling due January 1, 1894, and bringing into court the amounts tendered, and averring their ability, readiness and willingness to pay said amounts to said, Neil, together with any loss, cost or damage, or expense which he may have sustained or been put to, and to abide any order which the court might make in the premises.
They ask for an injunction, and that they may be allowed to redeem. The court of common pleas found that they were entitled to redeem upon paying said amounts and in addition thereto the costs and fees of Neil’s attorneys, and so decreed, and defendant appeals.
In Smith v. Whitbeck et al., 18 Ohio St. 471, it was held: “In order to show a forfeiture of an unexpired term of a leasehold estate, for non-payment of rent, the lessor must prove demand of payment of the lessee when due.”
The claim of forfeiture was regarded as atrict-issinij juris, and the demand was required: 1st. To be of the precise rent due; a penny too much or too little invalidated the demand. 2nd. To be made precisely upon the day when the rent was due and payable by the lease to save the "forfeiture. 3rd. To be at a convenient time before sunset, and this meant immediately preceding sunset, and for a sufficient space of time for counting and paying the money before sunset. 4th. To be made upon the land at the most notorious place. And such demand was required to be made whether or not any one was on the land to make payment.
The rent, in the lease under consideration, was to be paid on the day the same became due, without demand on said day or at any other time, upon the leased premises or elsewhere, and it was expressly provided that in the event any of the rent was not paid on the day it became due and remained unpaid for ninety days thereafter, then the lease should become void at the option of the lessor without any *432 demand made on the day the same became due or at any other time upon said leased premises or elsewhere, and that the lessor should have the right to re-enter.
However, if this lease was forfeited, it was not for the nonpayment of rent, but of taxes and assessments, and the lease, while it provides that it may be, at the option of the lessor, declared void for non-payment of taxes and assessment, or for failure by the lessee in the performance of any of. the covenants, agreements ¡or provisions on his part, does not provide that it may be terminated for such non-payment or failure to perform, without demand.
We do not think the agreement to pay taxes and assessments is made subject to the forfeiture clause for non-payment of rent without demand by the words, ‘ ‘ as further rent. ’ ’
While the taxes are to be paid as rent and as parcel of the-consideration, yet the payment of the taxes and the payment of the money, which together constitute the rent, are provided for in separate and distinct clauses; for default in the-payment of the money the lessor may without demand terminate the lease, but for .failure to pay the taxes the lease-provides that the lessee is to indemnify and save harmless-the lessor from and against any loss, cost, damage and expense which he may sustain, or be put to, by reason of any neglect or omission.
No demand was made by the lessor for the payment of the-taxes and assessments, nor does the lease in the event of their non-payment expressly provide for forfeiture without demand as it does in the matter of rent.
In Jackson v. Harrison, 17 Johnson’s Rep. 66, it was agreed in the lease that the lessor at his option might forfeit the lease for non-payment of rent or taxes, and it was held “that the lessor had no right to re-enter for a breach of the condition, without showing a demand of payment of the-taxes within the period required by law, in order to create a forfeiture. ’ ’
*433 In Garver v. Hannah, 6 Duer, 262, it was held that, where the covenant to pay taxes is broken, no demand is necessary, and the court say that the statement of Van Ness, J., to the contrary in Jackson v. Harrison was mere dictum, and not well considered.
■ In “The Elevator Case” 17 Fed. Rep.' 200, Miller, J., says: "In regard to taxes and rents, the law is well settled, I think, that a demand for the payment thereof is necessary as a condition precedent to the right of entry.”
In Meni v. Rathbone, 21 Ind. 454, it was held: “Where a lease is conditioned that, ‘ if default shall be made in any of the covenants therein contained on the part of the lessee, then such lease shall be deemed forfeited, and it shall be lawful for the lessor to re-enter said premises and remove all persons therefrom,” and one of the covenants on the part of the lessee requires him to pay all taxes assessed against the premises, and he- fails to pay the same, the lessor cannot take advantage of the breach of such covenant to forfeit the lease without first demanding or requesting the lessee to pay such taxes.”
In Byrane v. Rogers, 8 Minn. 247, it was held: “That upon breach of the covenant to pay taxes, the lessor, without any demand, had a right to re-enter. ’ ’ And, after noticing the New York, cases above cited, the judge says: “The covenant is to pay the tax; the right of re-entry accrues by reason of its non-payment and the consequent damage to the landlord of having his property liable to be sold. Should the landlord pay the tax, and then demand of the tenant its reimbursement to him, a refusal on the part of the tenant would give the landlord no right of re-entry, because such a refusal would be no violation of covenant to pay the tax, and covenants,'upon the breach of which forfeitures are claimed, must be strictly construed. A covenant to pay a tax, and a covenant to reimburse another who had paid it, would be very different both in terms and effect. ’ ’
Defendant’s counsel claim not only that demand is unnecessary, but also that “non-payment of taxes is not like *434 non-payment of rent, it puts in jeopardy the estate of ike lessor and equity does not relieve against a forfeiture effected for such -breach.” (Force, J., in Baldwin v. Rees, 8 Amer. Law Rec. 556.)
We do not think there is any substantial reason why demand for payment of taxes should not be just as essential to a forfeiture as a demand of rent.
The lessor, as well as the lessee, can ascertain the amount, and it would not be necessary, as suggested in the Minnesota case, that the lessor pay the taxes and then demand reimbursement; he could demand that the lessee pay the taxes when due, and notify him that in the event they became delinquent he would pay them and declare a forfeiture. Kirby v. Harrison, 2 Ohio St. 327.
The provision for forfeiture in case of non-payment would not relieve the lessor from the necessity of seeing to the payment of taxes. Such provision would not prevent a sale, or, in event of sale, afford him any relief. We think the tendency of courts of law, in cases where a forfeiture is claimed for the non-performance of a condition subsequent or for the non-payment of money, is to hold that a demand for the performance of the condition or for the payment of the money must have been made in order to establish the forfeiture, and that equity in such cases will afford relief unlpss the forfeiture appears to have been wilful.
In Carder v. Comm’rs of Fayette County, 16 Ohio St. 354, the testator had devised his farm to the county, provided the county paid to his widow, yearly, a certain sum of money,and paid all expenses incurred in securing their right and title to the same, and the court hold: ‘‘The failure of the county to pay the costs of probate of the will, or to refund them to the executrix who had caused probate thereof to be made before the county officers knew of its existence, and who had never demanded payment, does not work a forfeiture of the condition that the county should ‘pay all cx *435 penses of securing its title’ to the land devised.” See also Hogeboom v. Hall, 24 Wend. 146.
A demand being necessary to forfeiture for non-payment of rent, we think it should be also for non-payment of taxes, but we are not satisfied that such is the law. The cases above referred to do not seem to be well considered; the statements are in the nature of dicta; no authorities are cited, and they cannot be held to settle the question; nor do we think it necessary to pass upon it. The plaintiffs filed their petition, asking to be relieved from the forfeiture, and the matter we are to determine is whether they have made out a case entitling them to relief.
“The courts of equity could not relieve a tenant from forfeiture for breach of a covenant to insure. Lord Eldon laid it down that the court would not relieve against breaches of covenants except in cases where payment of money is a complete compensation, and will put the party in the same situation as he would have been if there had been no breach. In this case the landlord could not by any payment of money he put into the same situation, as he was entitled to be under the covenant. This rule having been found to operate very hardly on those few lessees who inadvertently and not wilfully neglected to insure, the legislature stepped in and remedied it, but in the case of such inadvertent neglects only.” Snell’s Principles of Equity, 314.
The same author says: “It seems not quite settled whether equity will (and the better opinion is that equity cannot) relieve against a forfeiture arising from any breach of covenant other than the'breach of covenant to pay rent, unless under very special circumstances. Equity will, however, require the covenantee to be satisfied with a substantial performance on the part of the covenantor, where the nature of the covenant permits of such performance.”
“It was an inflexible doctrine of the ancient common law, that parties must be held to a strict performance of all the stipulations of their valid agreements; that is, unless the agreement was wholly void from its illegality. Whenever, therefore, a contract provided for a penalty or a forfeiture, the full penalty or forfeiture would be enforced by a court of *436 law without the slightest regard to the amount of damages actually sustained by the obligee or promisee from the default The action of equity in such cases affords a most striking illustration of the principle which we are discussing, (i. e. Equity looks to the intent rather than to the form.) It was at first confined to contracts for the payment of some definite sum of money, in which the debtor also bound himself, in case of his default, to pay a larger sum by way of penalty, or that the creditor might become absolute owner of specific property of larger value by way of forfeiture, where the intent was plain that the penalty or forfeiture was added simply as a security for the payment of the real indebtedness. This action of equity with reference to purely money contracts was soon extended to other agreements in which a party undertook to perform some act, to render some service, to transfer some property, to surrender some right, and a penalty or forfeiture was added. The general doctrine was finally settled that, wherever a penalty or forfeiture is inserted merely to secure - tile payment of money, or the performance of some act, or the enjoyment of some right, or benefit, equity regards such payment, performance or enjoyment as the real and principal intent of the instrument, and the penalty or forfeiture as merely an accessory, and will therefore relieve the debtor party from such penalty or forfeiture, when ever the actual damages by the creditor party can" be adequately' compensated. The application of the principle in such cases, and the relief against penalties or forfeitures, must always depend upon the question whether compensation can or cannot be made. If the principal contract is merely for the payment of money, there can be no difficulty; the debtor party will always be relieved from the penalty or forfeiture upon paying the amount due and interest. If the principal contract is for the performance of some other act or undertaking, and its non-performance can be pecuniarily compensated, the amount of such damages will be ascertained, and the debtor will be relieved upon their payment. ” Pomeroy’s Eq. Juris., Secs. 381, 433.
Counsel discuss the questions of surprise, unavoidable accident, conduct on the part of the lessor tending to mislead. These do not lie. at the foundation of the doctrine. Mr. *437 Pomeroy, in a note to the last above section, says: “The doctrine of equitable interference to relieve against penalties and forfeitures has been described and discussed by some writers as a branch of the jurisdiction in cases of accident. In very ancient times, when the powers of the court of chancery were restricted by the language of the royal decree to certain specified heads, as good faith, conscience, fraud, mistake and accident, and it was necessary that every new exercise of power should be referred to some one of these heads, it may have been implied that the jurisdiction over penalties belonged to the head of accident. But it is evident hat this is not the true ' source of the jurisdiction. There can be no pretense of any accident in the execution of agreements containing penalties. The doctrine has a deeper foundation in universal principles of right, as shown in the preceding chapter.”
On the other hand he says, sec. 450: “It is well settled that a court of equity will not,under ordinary circumstances, set aside forfeitures incurred on the breach of many covenants contained in leases, or of stipulations in other agreements, although the compensation for the resulting injury could be ascertained without difficulty; aiid, on the other hand, the relief is often' given, as will appear from subsequent paragraphs, where the agreement secured by the clause of forfeiture is not one expressly and simply for the payment of money.”
Again, sec. 452: “A court of equity will refuse to aid a defaulting party and relieve against a forfeiture if his violation of the contract was the result of gross negligence, or was wilful and persistent.”
“A court of equity has power to relieve a party against forfeiture or penalty incurred by the breach of a condition subsequent, when no wilful neglect on his part is shown, upon the principle that a party having a legal right shall not be perimtted to avail himself of it for the purpose of injustice and oppression.” Noyes v. Anderson, 124 N. Y. 175.
“Equity will relieve against a forfeiture incurred by the breach of a covenant to insure in a lease of real estate.caused by accident or mistake, if no actual damage has been sustained by the lessor.”' Mactier v. Osborn, 140 Mass. 399.
*438 Defendant’s counsel claim relief from the so-called forfeiture can not be granted without doing violence to the contract rights of the defendant. That “the provisions of the lease in regard to forfeiture, determination and re-entry are of the clearest and most stringent character; they are not illegal or againstjpublie policy or good morals, ¶ The property belonged to Mr. Neil. He was under no obligation to let it to Mr. English. He might so limit thebjstate granted and require such terms and conditions as he pleased, and Mr. English might accept it or them, or not, as he pleased. There is no proof that Mr. English was in any wise unable to take care of himself. On the contrary he was in fact a most capable and cautious business man. The presumption is that the rental was reduced because of the severe stipulations in regard to forfeiture, determination and re-entry. By reason of them, the lessor received less rent and» more protection; and there was imposed upon the lessee a less rental and more hazard. To now discard these provisions, is to make the lease less valuable to Mr. Neil, and more valuable to the assignees of Mr. English. It would take from Mr. Neil what lie never agreed to sell, and give to such assignees what Mr. English never bought.’’ That the provisions of the lease are of the most stringent character, we readily admit, but we do not think that to grant relief is to do violence to the contract rights of the defendant. The law, so far as it is applicable, forms a part of the contract, and if the law, under the circumstances of this case, will give relief, then the parties are presumed to have contracted that such relief might be given.
Again, they claim that no demand upon the lessee for the payment of, the taxes and assessments was necessary; that to require a demand for the 'performance of' the covenant to pay taxes and assessments would conflict with the express terms and conditions of the lease; that it would do violence to its terms to construe it as meaning that if the lessee failed *439 to perform his said covenant to pay the taxes and assessments, and the lessor elected for that reason that the estate granted should terminate, such estate' should not, from thenceforth and at all times thereafter, cease, determine and be utterly void, but should from thenceforth and at all times thereafter continue and subsist until the demand for the performance was made; that the very object of the insertion of the words “from thenceforth and at all times thereafter” was to exclude any necessity for a demand or anything else than the failure to perform by the lessee and the election by the lessor. We do not think this was the object. If such had been the intention the parties would have said so, and more naturally would have used the much plainer words used to waive demand for payment of rent. And this being true, it is a sufficient answer to say that, omitting the words “without demand,” their argument applies just as forcibly to the clause providing for the payment of rent, and yet no one will claim that a demand, unless expressly -waived, is not necessary to a forfeiture for non-payment of rent.
We think these provisions in the lease were intended to secure the payment of money. The lease expressly provides “and it is further agreed between said parties that for better securing the payment of the rents herein reserved and the performance of the covenants herein contained, the party of the first part shall have a first lien, ” etc. If the lease had provided that the lessee in the event of the non-payment of taxes on the day they became due, should pay the lessor a sum equal to double the amount of the taxes, it would have been a penalty. When it involves the loss of lands, or any estate or interest therein, it is a forfeiture, And the same test in substance determines the nature of the provision by which the performance of some collateral act is secured. Pomeroy’s Equity Jurisprudence, sec. 436.
Such a construction is consistent with good faith and fair dealing, while the construction contended for by defendant’s *440 counsel can obtain only by assuming that their client had set a trap in which to catch the lessee in the event the rental value of the property was increased so as to make it to his interest to terminate the lease.
“A court of equity regards a penalty or forfeiture as intended to secure the fulfillment of the contract and not to enable one party to profit by the default of the other, or obtain a collateral advantage which -as no part of the main design.” Wh. & T. L. C. in Eg., vol. 2, page 2044; Story on Equity; sec. 1317.
At law the mortgagor forfeited his estate for condition broken until equity engrafted upon it a defeasance. Contracts will be considered as providing for a penalty rather than liquidated damages in order that relief may be granted. Statutes providing for a forfeiture generally provide for notice or an opportunity to redeem. Much stress is laid upon Lessee of McMillan v. Robbins, 5 Ohio, 28. This case, however, seems to be very considerably softened by the case of Estabrook v. Royon, guardian, 52 Ohio St., (33 W. L. B. 115), and section 2852, of the Revised Statutes, now provides for forfeiture only in case the life tenant does not redeem within one year. No case has come under our observation where the courts have refused relief against heavy loss. • It would be much better that a demand should be necessary, that the party should have a locus pocnitentiac, than to hold this unnecessary and then grant relief in every case of hardship.
In Mactier v. Osborn, 146 Mass. 399, where forfeiture had been claimed for failure to insure, the court say, ‘‘it was an occurrence not anticipated by her, and not known to her until after the demandant' entered to enforce a forfeiture. No misconduct or culpable fault can be attributed to her. The lessors» had not in fact been injured by the accident, and can now be put in statu quo. It is against equity and good conscience that the demandant should insist upon a forfeiture of a valuable leasehold estate.”
*441 Applying the foregoing principles, in the light of the cases and authorities cited, to the facts of the case before us, we think the plaintiffs entitled to the relief for which they pray. It was, of course, their duty to see that the taxes and assessments were paid, but there is no evidence that the default was wilful or the result of gross negligence. Frank was taken entirely bj surprise, and Goldstein’s omission was merely an inadvertence. The taxes payable June 20, 1892, and those subsequently becoming payable were not paid, and yet the lessor, .who lives in Columbus, did not discover this until January, 1894. True, it was not his duty to pay, but he had a great interest in seeing that they were paid.
We do not think it was of the essence of the contract that the taxes should be paid on the twentieth days of June and December. The premises could not be sold at tax sale until the 16th of January. On the loth Goldstein tendered them to the treasurer, and on the same day tendered to Mr. Neil the amount he had paid with interest. The rent and taxes since falling due have been tendered, and plaintiffs in their petition say they are ready and willing to pay to the lessor any loss, cost or damage, or expense, which he may have sustained or been put to by reason of any neglect or.omission in the punctual discharge of said taxes and assessments, and that they are ready, able and willing to abide any order which the court may make in the premises.
They have, since learning of the delinquency of the taxes, shown eagerness, promptitude and ability to pay the taxes, assessments,penalties, interest and costs, and we think ought, in equity, tobe permitted to save themselves from the heavy losses they would suffer by a forfeiture of the lease.
The court below decreed that they should be relieved from the forfeiture upon condition that they, paid all accrued and unpaid rents and interest thereon; all taxes, assessments and penalties and interest thereon; all the costs of this suit and of the suit before the justice of the peace, and attorneys fees *442 in the sum of three hundred dollars, to the lessor’s attorneys, and such a decree may be drawn, the .costs on appeal to be paid by Neil, and interest to be computed to the date of decree below.
Powell, Baryar, Marriott, Stillwell and Hijnemaw, for plaintiffs.
Harrison, Olds and Henderson, for defendants!,